*844 Pennell, J.
¶ 1 Eddie Arnold was convicted of failing to register as a sex offender. His conviction was based on a statutory rape statute that was subsequently repealed. Prior decisions of our court, issued by Divisions One and Two, have overturned failure to register convictions in analogous circumstances. The doctrine of stare decisis persuades us to follow suit. We therefore grant Mr. Arnold’s personal restraint petition (PRP) and vacate his conviction.
BACKGROUND
¶2 The facts in this case are materially similar to those considered by Division One of our court in State v. Taylor, 162 Wn. App. 791, 259 P.3d 289 (2011), and Division Two in In re Personal Restraint of Wheeler, 188 Wn. App. 613, 354 P.3d 950 (2015). On June 27, 1988, Mr. Arnold pleaded guilty to second degree statutory rape in violation of former RCW 9A.44.080(1) (1979). Several days after the guilty plea, the legislature repealed provisions defining the three degrees of statutory rape in former RCW 9A.44.070 (1979), .080, and .090 (1979), and replaced them with three degrees of the crime of rape of a child in RCW 9A.44.073, .076, and .079. See Laws of 1988, ch. 145, §§ 2-4, 24, 26.[1]
¶3 Mr. Arnold was released from his prison sentence in August 1990. That same year, the legislature enacted RCW 9A.44.130, which required sex offenders to register. Laws of 1990, ch. 3, § 402. Throughout the 2000s, Mr. Arnold was convicted five times for failure to register as a sex offender.[2]
*845 ¶4 In 2011, the Court of Appeals decided Taylor. That case reversed a conviction for failure to register as a sex offender, reasoning that the defendant’s prior conviction for third degree statutory rape was no longer listed in the provision of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, that defined “sex offense.” 162 Wn. App. at 801.
¶5 In October 2013, the State charged Mr. Arnold with failure to register. The State alleged Mr. Arnold’s 1988 statutory rape conviction required him to register and Mr. Arnold failed to comply with RCW 9A.44.130’s registration requirements between May and October 2013. Several weeks later, the State also charged Mr. Arnold with first degree trafficking in stolen property.
¶6 In March 2015, the State and Mr. Arnold negotiated a global plea agreement, under which Mr. Arnold pleaded guilty to failure to register and an amended second degree trafficking in stolen property charge. The State and Mr. Arnold jointly recommended 51 months of incarceration for both charges and agreed Mr. Arnold would serve both sentences concurrently. The trial court accepted the plea agreement and imposed the requested sentence on June 4.
¶7 Two weeks after the sentencing hearing, the Spokane County Sheriff’s Office sent Mr. Arnold a letter informing him that he was relieved of his duty to register as a sex offender pursuant to Taylor. On August 6, 2015, Mr. Arnold moved to withdraw his guilty plea under CrR 7.8. Mr. Arnold asserted that he was not required to register as a sex offender under Taylor and he was unaware of Taylor when he pleaded guilty. The trial court transferred Mr. Arnold’s motion to this court for consideration as a PRP.
ANALYSIS
¶8 Divisions One and Two of our court have ruled invalid convictions that are materially indistinguishable from Mr. Arnold’s. Taylor, 162 Wn. App. at 801; Wheeler, 188 *846 Wn. App. at 621. In brief, these decisions hold that because the sex offender registration statute specifically requires registration by anyone convicted of a felony that “is” a violation of chapter 9A.44 RCW, the registration obligation does not apply to convictions under Washington’s repealed statutory rape statute.
¶9 The State largely acknowledges that if we were to follow Taylor and Wheeler, Mr. Arnold’s failure to register conviction cannot stand.[3] Nevertheless, the State urges us not to follow the lead of our court’s other divisions because their decisions rest on an incorrect interpretation of the relevant statutes. As pointed out by our dissenting colleague, the State’s argument has much force. Nevertheless, we are persuaded to follow the lead of our court’s prior decisions under the doctrine of stare decisis.
¶10 “Stare decisis” is a Latin phrase meaning “ ‘to stand by things decided.’ ” Black’s Law Dictionary 1626 (10th ed. 2014). The doctrine of stare decisis has two primary incantations: vertical stare decisis and horizontal stare decisis. Under vertical stare decisis, courts are required to follow decisions handed down by higher courts in the same jurisdiction. For example, trial and appellate courts in Washington must follow decisions handed down by our Supreme Court and the United States Supreme Court. Adherence is mandatory, regardless of the merits of the higher court’s decision. State v. Gore, 101 Wn.2d 481, 487, 681 P.2d 227 (1984). Horizontal stare decisis is different and more complex. Under this doctrine a court, such as this one, is not required to follow its own prior decisions. Yet it is often well advised to do so. Adherence to past decisions through the *847 doctrine of stare decisis promotes clarity and stability in the law, thereby enabling those impacted by the courts’ decisions to make personal and professional decisions that comply with legal mandates. See In re Rights to Waters of Stranger Creek, 77 Wn.2d 649, 653, 466 P.2d 508 (1970).
¶11 Horizontal stare decisis is fairly well defined at the level of our Supreme Court. While it is not strictly bound by prior decisions, a litigant seeking to upend a prior case faces an arduous task. Our Supreme Court does not lightly set aside a prior decision. State v. Otton, 185 Wn.2d 673, 678, 374 P.3d 1108 (2016). Because of the many benefits of adhering to precedent, the Supreme Court will revisit prior decisions only upon “ ‘a clear showing that an established rule is incorrect and harmful.’ ” Id. (quoting Stranger Creek, 77 Wn.2d at 653). Both prongs of this analysis are required. Deggs v. Asbestos Corp., 186 Wn.2d 716, 727-28, 381 P.3d 32 (2016); State v. Barber, 170 Wn.2d 854, 864, 248 P.3d 494 (2011). A prior case that is merely incorrect, but not also harmful, does not meet the criteria for reversal. Deggs, 186 Wn.2d at 727-28; Barber, 170 Wn.2d at 864.
¶12 When it comes to our state Court of Appeals, application of horizontal stare decisis has been less clear. See Mark DeForrest, In the Groove or in a Rut? Resolving Conflicts Between the Divisions of the Washington State Court of Appeals at the Trial Court Level, 48 Gonz. L. Rev. 455, 456-57 (2012/13); Kelly Kunsch, Stare Decisis: Everything You Never Realized You Need To Know, 52 Wash. St. Bar News, no. 10, Oct. 1998, at 31. Our courts have applied the doctrine to prior decisions issued by the same division. See, e.g., State v. Stalker, 152 Wn. App. 805, 811-12, 219 P.3d 722 (2009). However, no case has explicitly adopted stare decisis for decisions issued by a different division.[4]
*848 ¶13 We are not prepared to resolve the question of exactly how stare decisis applies in the current context, involving decisions issued by other divisions. Nevertheless, it is apparent that stare decisis must apply at least to some degree; otherwise, we face vexing problems. Because one panel decision cannot overturn a prior contrary decision, “two inconsistent opinions . . . may exist at the same time,” Grisby v. Herzog, 190 Wn. App. 786, 809, 362 P.3d 763 (2015), both with binding force over trial courts and litigants throughout the state. This creates a potential problem for the liberty interests of our state’s citizens. The issuance of conflicting decisions about what an individual must do to abide by the law, each of which is equally binding, would call the very constitutionality of our system of appellate jurisprudence into question. See Johnson v. United States, _ U.S. _, 135 S. Ct. 2551, 2556, 192 L. Ed. 2d 569 (2015) (“the Government violates [the due process guaranty of the Fifth Amendment to the United States Constitution] by taking away someone’s life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement”).
¶14 The harm caused by failing to follow Taylor and Wheeler under stare decisis is salient here. Regardless of whether Taylor and Wheeler were incorrectly decided, parting company at this point would create unjustified harm by rendering the applicable law impermissibly vague.
¶15 The State and our dissenting colleague take a different approach to harm. They claim the greatest harm lies in continued application of Taylor and Wheeler because the two decisions hamper law enforcement’s efforts at community protection. This may be a valid concern. But it is not something we can redress. Even if we were to rule in the State’s favor, Taylor and Wheeler would still stand. Rather than eliminating harm, the issuance of a decision contrary to Taylor and Wheeler would exacerbate harms to the public in that sex offenders would still likely avoid registration *849 but the legal rights and obligations of individuals throughout the state would also be in doubt.
¶16 The facts of this case make the practical problems of disagreeing with Taylor and Wheeler apparent. After his conviction, Mr. Arnold was sent a notice by the sheriff’s department stating he no longer needed to register as a sex offender based on Taylor. Presumably other similarly situated individuals were also sent notices. What steps would the sheriff’s department need to take if we issued a decision contrary to Taylor? Because we cannot overturn Taylor, it would not be able to advise individuals that its prior notice was incorrect. Yet the failure to advise individuals of a decision contrary to Taylor would frustrate the State’s desire to increase sex offender registrations. Our court strives to solve problems, not create them. But departing from Taylor and Wheeler would do just that.
¶17 We decline to upend settled expectations throughout the state by rejecting Taylor and Wheeler. The harm of doing so is too great. The State’s criticisms of our prior decisions are well taken. But only the Washington Supreme Court can provide the State the kind of definitive relief it seeks. That route for review remains available.
 ¶18 Because Mr. Arnold’s 2015 failure to register conviction was facially invalid pursuant to Taylor and Wheeler, he is illegally restrained and therefore entitled to relief on his PRP. The fact that Mr. Arnold received a concurrent conviction and sentence for possession of stolen property does not alter this result. In re Pers. Restraint of Powell, 92 Wn.2d 882, 602 P.2d 711 (1979) (PRP relief available despite concurrent sentence); see also In re Pers. Restraint of Martinez, 171 Wn.2d 354, 363-64, 256 P.3d 277 (2011); Wheeler, 188 Wn. App. at 617 (holding petitioner was under “restraint” even though he had completed his sentence for failure to register as a sex offender).
*850 CONCLUSION
¶19 We grant Mr. Arnold’s personal restraint petition and vacate his 2015 conviction for failing to register as a sex offender.
Siddoway, J., concurs.

 The legislature passed and the governor approved the bill in March 1988, but it did not take effect until July 1, 1988.

 Mr. Arnold has not sought relief from these prior convictions here.

 The State argues Mr. Arnold was still incarcerated when the registration statute took effect and therefore State v. Ward, 123 Wn.2d 488, 869 P.2d 1062 (1994) controls this case. The Ward court held that requiring individuals to register who were incarcerated or under supervision at the time the statute took effect did not violate the constitutional prohibition against ex post facto laws. Id. at 511. Ward does not apply here because this case does not involve an ex post facto issue. The question here is whether Mr. Arnold’s 1988 conviction meets the SRA’s definition of a “sex offense.’’

 In State v. Yarbrough, 151 Wn. App. 66, 84 n.5, 210 P.3d 1029 (2009), Division Two invoked stare decisis to decline the appellant’s invitation to “overturn” State v. Boot, 89 Wn. App. 780, 950 P.2d 964 (1998), and State v. Campbell, 78 Wn. App. 813, 901 P.2d 1050 (1995). Campbell was a decision from Division Two, but Boot was decided by Division Three.