

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE FEB 15 2018
[signature]
CHIEF JUSTICE

This opinion was filed for record

at 8:00am on Feb 15, 2018

[signature]

SUSAN L. CARLSON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
| --- | --- |
| In the Matter of the Personal Restraint of<br><br>EDDIE D. ARNOLD,<br><br>Petitioner. | NO. 94544-6<br><br>EN BANC<br><br>Filed  FEB 15 2018 |

GORDON McCLOUD, J.—Eddie Dean Arnold challenges his conviction for failure to register as a sex offender, in violation of RCW 9A.44.130. He argues—and the Court of Appeals agreed—that he was not required to register because his 1988 conviction of statutory rape in violation of a statute amended in 1979, was not a "sex offense" within the meaning of the current sex offender registration statute. We disagree. The prior sex offense of which Arnold was convicted meets the two critical prerequisites to a countable "sex offense" listed in former RCW 9.94A.030(46)(b) (2012): (1) that prior conviction was based on a statute that was "in effect . . . prior to July 1, 1976" and (2) that prior conviction was based on a

statute that is "comparable" to a current "sex offense" as defined in former RCW 9.94A.030(46)(a) (2012).[1]

The Court of Appeals, Division Three, reached a contrary conclusion in part because it felt bound by prior decisions of the two other divisions of the Court of Appeals. *In re Pers. Restraint of Arnold*, 198 Wn. App. 842, 396 P.3d 375 (2017). Division Three labeled this deference to a prior out-of-division decision a rule of "horizontal stare decisis." *Id.* at 846-48. We reject this rule. It conflicts with the statutes establishing the powers and duties of the Court of Appeals and our court; it conflicts with court rules on those topics, it conflicts with prior decisions, and it would tend to diminish the robust, adversarial development of the law that is the gem of our current approach. We therefore reverse.

## FACTS

This case involves statutory interpretation of the failure-to-register statute, RCW 9A.44.130. That statute requires offenders who have been convicted of a "sex offense" to register as sex offenders at certain times, and it depends on RCW 9.94A.030 for the definition of a "sex offense" that triggers the registration requirement. RCW 9A.44.130(1)(a), .128(10)(a). That statute, former RCW

---

[1] Arnold was charged with failure to register in 2013; therefore we refer to former RCW 9.94A.030(46) (2012) for the definition of "sex offense." This definition was moved to RCW 9.94A.030(47) in 2015. LAWS OF 2015, ch. 261, § 12. However, the analysis remains the same for the current statute. *See* LAWS OF 2016, ch. 81, § 16.

2

9.94A.030(46) (2012), includes within the definition of "sex offense" all felony violations of chapter 9A.44 RCW as well as several other categories. For example, it includes federal and out-of-state convictions that would be classified as sex offenses in this state. Notably, that statute also includes "[a]ny conviction for a felony offense in effect at any time prior to July 1, 1976, that is comparable to a felony classified as a sex offense in (a) of this subsection." Former RCW 9.94A.44.030(46)(b) (2012). This last subsection is the one at issue here, given the date of Arnold's prior conviction.

On June 27, 1988, Arnold pleaded guilty to a second degree statutory rape committed in 1987 in violation of former RCW 9A.44.080 (1979). Resp. to Pers. Restraint Pet., Attach. at A-2.

Shortly after Arnold's 1988 guilty plea, the legislature repealed that statutory rape statute and the other statutes defining the three degrees of statutory rape in former RCW 9A.44.070, .080, and .090 (1979), and replaced them all with statutes criminalizing three degrees of the crime of rape of a child: RCW 9A.44.073, .076, and .079. *See* SUBSTITUTE H.B. 1333, ch. 145, §§ 2-4, 24, 26, 50th Leg., Reg. Sess. (Wash. 1988).

Then, in 1990, the legislature enacted RCW 9A.44.130, which required certain sex offenders to register. SECOND SUBSTITUTE S.B. 6259, ch. 3, § 402, 51st

3

Leg., Reg. Sess. (Wash. 1990). Arnold has been convicted five times of failure to register as a sex offender, but he is challenging only his most recent conviction here. Resp. to Pers. Restraint Pet., Attach. at C-1.

In 2011, Division One decided *State v. Taylor*, which held that offenders—like Arnold—who were convicted under former RCW 9A.44.070, .080, and .090 (1979), do not have to register as sex offenders because the period when those crimes were in effect was not covered by the failure-to-register statute. In other words, those convictions fell within a statutory time period "gap" in the registration requirement. 162 Wn. App. 791, 799, 259 P.3d 289 (2011).

Nevertheless, in 2013, the State charged Arnold with failure to register and first degree trafficking in stolen property. Resp. to Pers. Restraint Pet., Attach. at D-1, E-1. In March 2015, Arnold pleaded guilty to failure to register and second degree trafficking in stolen property. *Id.* at D-3 to D-8, E-3 to E-8. The trial court accepted the plea agreement and imposed a 51-month sentence on June 4, 2015. *Id.* at E-9 to E-20.

Two weeks after the sentencing hearing, the Spokane County Sheriff's Office sent Arnold a letter informing him that he was relieved of his duty to register as a sex offender because of *Taylor*. *Id.* at F-1.

4

PROCEDURAL HISTORY

Shortly after receiving the sheriff's letter, Arnold timely moved to withdraw his guilty plea under CrR 7.8. Mot. for Withdrawal of Guilty Plea, *State v. Arnold*, No. 13-1-03641-1 (Spokane County Super. Ct., Wash. Aug. 6, 2015). Arnold stated that he was not required to register and was unaware of *Taylor* when he pleaded guilty. *Id.* at 2-3. The trial court transferred the motion to the Court of Appeals for consideration as a personal restraint petition. Order Transferring Case to Court of Appeals, *State v. Arnold*, No. 13-1-03641-1 (Spokane County Super. Ct., Wash. Jan. 19, 2016).

The Court of Appeals, Division Three, issued its decision on April 25, 2017. 198 Wn. App. 842. That decision by the three-judge panel contained four separate opinions: a majority, a separate concurrence, the majority author's concurrence, and a dissent. The opinion, though fractured, held that Arnold did not have a statutory obligation to register as a sex offender. That opinion also articulated a new "horizontal stare decisis" standard, stating, "Regardless of whether *Taylor* and [*In Personal Restraint of*] Wheeler[2] were incorrectly decided, parting company at this point would create unjustified harm by rendering the applicable law impermissibly vague." *Id.* at 848.

---

[2] 188 Wn. App. 613, 354 P.3d 950 (2015).

We granted review to resolve the conflicting opinions on the interpretation of the registration statute and the conflicting opinions on whether stare decisis applies between or among divisions of our Court of Appeals.

ANALYSIS

I.     Under the current statutory framework, Arnold is required to register as a sex offender

In 2013, Arnold was charged with failure to register as a sex offender in violation of RCW 9A.44.130(1)(a). That subsection provides, in relevant part,

> Any adult or juvenile residing . . . in this state who has been found to have committed or has been convicted of any *sex offense* . . . shall register with the county sheriff for the county of the person's residence.

(Emphasis added.) The chapter defines "sex offense" in RCW 9A.44.128(10):

> "Sex offense" means:
>      (a) Any offense defined as a sex offense by RCW 9.94A.030 . . .

The cross-referenced former RCW 9.94A.030(46) (2012) stated:

> "Sex offense" means:
>      (a)(i) A felony that is a violation of chapter 9A.44 RCW [sex offenses] other than RCW 9A.44.132 [failure to register as sex offender or kidnapping offender—refusal to provide DNA];
>
> . . . .
>
>           (v) A felony violation of RCW 9A.44.132(1) (failure to register) if the person has been convicted of violating RCW 9A.44.132(1) (failure to register) on at least one prior occasion;[3]

---

[3] Arnold was charged with failure to register due to his 1988 second degree statutory rape conviction. Based on former RCW 9.94A.030(46)(a)(v) (2012), it appears as though

> (b) *Any conviction for a felony offense in effect at any time prior to July 1, 1976, that is comparable to a felony classified as a sex offense in (a) of this subsection.*

(Emphasis added.)

In 1988, Arnold was charged under former RCW 9A.44.080 (1979) with second degree statutory rape. This conviction is not listed in former RCW 9.94A.030(46)(a) (2012), which listed only crimes that were currently on the books. The question for us is whether it is included in former RCW 9.94A.030(46)(b) (2012). To fall within subsection (b)'s coverage, the conviction triggering the duty to register has to be based on a statute that (1) was "in effect . . . prior to 1976" *and* (2) is "comparable" to a current offense listed in former RCW 9.94A.030(46)(a). As discussed below, Arnold's conviction meets both prerequisites.

### A. Former RCW 9A.44.080 was in effect before July 1, 1976

The first prerequisite is that the crime of conviction—here, former RCW 9A.44.080 (1979)—must have been in effect "prior to July 1, 1976." Former 9.94A.030(46)(b) (2012). The offense of which Arnold was convicted in 1988 was amended in 1979. It provided:

---

Arnold could have been charged with failure to register due to his prior convictions for violating RCW 9A.44.132(1). Arnold also has failure to register convictions from 2007, 2004, 2003, and 2000—all of which occurred prior to 2012 and would independently support a failure to register charge.

> (1) A person over sixteen years of age is guilty of statutory rape in the second degree when such person engages in sexual intercourse with another person, not married to the perpetrator, who is eleven years of age or older, but less than fourteen years old.
>
> (2) Statutory rape in the second degree is a class B felony.

Former 9A.44.080 (1979).

A pre-July 1, 1976 statute, former RCW 9.79.210 (1975),[4] provided:

> (1) A person over sixteen years of age is guilty of statutory rape in the second degree when such person engages in sexual intercourse with another person, not married to the perpetrator, who is eleven years of age or older but less than fourteen years old.
>
> (2) Statutory rape in the second degree is a felony, and shall be punished by imprisonment in the state penitentiary for not more than ten years.

There is no debate that the elements of these statutes are the same.[5] The 1979 statute under which Arnold was convicted was thus in effect prior to July 1, 1976. Simple recodification of the offense number did not change the statute's elements.[6]

---

[4] This statute was effective on September 8, 1975. LAWS OF 1975, at ii (effective date of laws).

[5] Wash. Supreme Court oral argument, *In re Pers. Restraint of Arnold*, No. 94544-6 (Jan. 11, 2018), at 21 min., 13 sec. through 21 min., 39 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

[6] It is important to note the differences between Arnold's conviction and *In re Personal Restraint of Thompson*, 141 Wn.2d 712, 10 P.3d 380 (2000). This court in *Thompson* held that Thompson's conviction was invalid on its face because it violated the ex post facto clause—Thompson was charged with first degree rape of a child, which was not a crime until almost two years after the offense occurred. *Id.* at 716; *see* WASH. CONST. art. I, § 10, cl. 1. There was a similar offense on the books before, but its elements were different. *Id.* at 728. The elements of the 1975 crime and the 1979 crime here, in contrast, are identical.

8

### B. Former RCW 9A.44.080 (1979) is comparable to a current offense listed in former RCW 9.94A.030(46)(a)

The second prerequisite to classification as a "sex offense" triggering registration requirements in former RCW 9.94A.030(46)(b) (2012) is that the prior conviction be "comparable to a felony classified as a sex offense in (a) of this subsection," in other words, to a felony listed in former RCW 9.94A.030(46)(a) (2012).[7]

Former RCW 9.94A.030(46)(a) (2012) lists these potentially comparable felonies:

> (i) A felony that is a violation of chapter 9A.44 RCW other than RCW 9A.44.132;
> (ii) A violation of RCW 9A.64.020;
> (iii) A felony that is a violation of chapter 9.68A RCW other than RCW 9.68A.080;
> (iv) A felony that is, under chapter 9A.28 RCW, a criminal attempt, criminal solicitation, or criminal conspiracy to commit such crimes; or
> (v) A felony violation of RCW 9A.44.132(1) (failure to register) if the person has been convicted of violating RCW 9A.44.132(1) (failure to register) on at least one prior occasion.

---

[7] This statute does not require that the defendant's prior offense match a particular level of felony—Class A, B, or C—to be "comparable." In that respect, it differs markedly from the definition of "comparability" in the Sentencing Reform Act of 1981, RCW 9.94A.525(3).

9

We need go no further than subsection (i) because former RCW 9A.44.080 (1979) is comparable to several of the "sex offenses" listed in current chapter 9A.44 RCW. To determine whether the prior conviction statute and the current chapter 9A.44 RCW statute are comparable, we start with the elements of those crimes.[8] Despite differences in language, the elements of Arnold's 1988 conviction are the same as, or encompass, one or more of the following chapter 9A.44 RCW felonies, depending on the age of the child: RCW 9A.44.073 (rape of a child in the first degree), RCW 9A.44.076 (rape of a child in the second degree), RCW 9A.44.079 (rape of a child in the third degree), RCW 9A.44.083 (child molestation in the first degree), RCW 9A.44.086 (child molestation in the second degree), or RCW 9A.44.089 (child molestation in the third degree). In fact, there is no set of facts that would support a conviction under former RCW 9A.44.080 (1979) that would not also support a conviction of some felony under current chapter 9A.44 RCW.

Indeed, Arnold does not argue to the contrary. He seems to concede that former RCW 9A.44.080 (1979) could also be charged as some felony listed in

---

[8] *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005) (citing *State v. Morley*, 134 Wn.2d 588, 605-06, 952 P.2d 167 (1998); *see also State v. Stockwell*, 159 Wn.2d 394, 397, 150 P.3d 82 (2007) (using the *Lavery* comparability test to hold that rape of a child in the first degree is comparable to statutory rape of a child in the first degree under the Persistent Offender Accountability Act's comparability clause, RCW 9.94A.030(33)).

chapter 9A.44 RCW, depending on the age of the child. Instead, he argues that former RCW 9A.44.080 (1979) is not "comparable" under the analysis set forth in *Taylor*.

### C. Contrary to the holdings in Taylor and Wheeler, the "repeal" of former RCW 9A.44.080 (1979) does not change the analysis required by former RCW 9.94.030(46)(b) (2012)

The Court of Appeals in *Taylor* read the comparability requirement differently. It read former RCW 9.94A.030(46)(b) (2012)'s requirement that a prior conviction "is comparable" to a current chapter 9A.44 RCW felony as a requirement that the prior conviction be under a currently existing—"is," not "was"—statute. For that reason, it ruled that former RCW 9.94A.030(46)(b) "did not apply the duty to register to crimes not presently listed in chapter 9A.44 RCW," and called this lack of coverage a "gap" in the registration requirement. *Taylor*, 162 Wn. App. at 798-79. Applying that holding to the case before it, the *Taylor* court held that since Taylor pleaded guilty to statutory rape in the third degree in 1988 in violation of former RCW 9A.44.090, which was amended in 1979, Taylor was exempt from the registration requirement. It agreed with Taylor that the sex offender registry statute did not apply to his conviction because former RCW 9A.44.090 (1979) was not a currently existing statute and was not scooped into the registration requirement by the reference to pre-July 1, 1976 crimes because it was a post-1976 crime: "[T]here

11

is no provision, comparable to what was done for the pre-1976 convictions, for offenses listed in chapter 9A.44 RCW that existed after 1976 but were subsequently repealed." *Taylor*, 162 Wn. App. at 799. In other words, the *Taylor* court held that since former RCW 9.94A.030(46)(b) explicitly included statutes existing before July 1, 1976, a court could compare those to a current chapter 9A.44 RCW felony, but could not compare statutes existing after July 1, 1976 because they were not explicitly listed.

Four years later, the court in *Wheeler* agreed with that interpretation. 188 Wn. App. 613. It ruled that former RCW 9.94A.030(33) (1997), whose language is similar to former RCW 9.94A.030(46)(a) (2012) language we are addressing here, says "*is*" (not *was*)—so the court must compare two currently existing statutes. *Id.* at 620. Wheeler, like Arnold, was convicted under a prior statute, not a currently existing statute. The *Wheeler* court therefore concluded that the repealed statutes could not be comparable and Wheeler had no duty to register. *Id.* at 620-21.

We disagree. The *Taylor* and *Wheeler* courts seem to collapse the question of whether the defendant was convicted of violating a pre-July 1, 1976 statute with the question of whether the defendant was convicted of something comparable to a current chapter 9A.44 RCW felony. As to the first question, it is clear that the statutes under which Taylor, Wheeler, and Arnold were convicted all existed prior to 1976.

12

*See supra* Section I.A. Because the statutes existed prior to July 1, 1976, the backward-looking inquiry of former RCW 9.94A.030(46)(b) (2012) is fulfilled, and the court must proceed to the question of comparability, *see supra*, at Part I.B. As to that question, former RCW 9.94A.030(46)(b) (2012)'s use of the phrase "is comparable" cannot possibly bar the court from comparing the sex crime of conviction (which is identical to a pre-July 1, 1976 crime) with a current sex felony. We already know that we can compare Arnold's violation of the 1979 statute to the current crime—the fact that the 1979 statute was identical to a pre-July 1, 1976 crime tells us that. The only remaining question is how that 1979 statute matches up against a current chapter 9A.44 RCW felony.

For example, *State v. Stockwell* compared former RCW 9A.44.070 (1979)—statutory rape in the first degree, which was repealed at the same time as Arnold's 1988 rape conviction—with RCW 9A.44.073, rape of a child in the first degree, to determine whether Stockwell met the requirements of the Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981, ch. 9.94A RCW. 159 Wn.2d 394, 397, 150 P.3d 82 (2007). Like the registration statute, which defines a "sex offense," in part, as "[a]ny conviction . . . that *is comparable* to a felony classified as a sex offense in (a) of this subsection," former RCW 9.94A.030(46)(b) (2012) (emphasis added), the POAA defines a "persistent offender" as someone who

"[h]as . . . been convicted as an offender on at least one occasion . . . under prior Washington law that *is comparable* to the offenses listed in (b)(i) of this subsection." RCW 9.94A.030(38)(b)(ii) (emphasis added). In *Stockwell*, we stated that statutory rape in the first degree and rape of a child in the first degree are legally comparable. *Stockwell*, 159 Wn.2d at 400. The comparability analysis required in the sex offender registration statute does not requires a different interpretation of "is" from that used in our *Stockwell* decision.

The sex offender registration statute, RCW 9A.44.130, therefore requires Arnold to register because of his 1988 conviction for violating former RCW 9A.44.080 (1979).

II. One division of the Court of Appeals should give respectful consideration to decisions of another division, but should not apply stare decisis to that prior decision

The members of the Division Three panel deciding this case did not all disagree with this approach. But they declared that they were bound by decisions of other divisions of the Court of Appeals to the contrary. The lead opinion in *Arnold* declined to "upend settled expectations throughout the state by rejecting" prior decisions of Divisions One and Two, and therefore followed the reasoning presented in Division One's *Taylor*, 162 Wn. App. 791, and Division Two's *Wheeler*, 188 Wn.

14

App. 613. 198 Wn. App. at 849. Three of the four *Arnold* opinions call this required deference "horizontal stare decisis."

Each opinion provides a different description of "horizontal stare decisis." The majority refers to "horizontal stare decisis" but states, "[W]e are not prepared to resolve the question of exactly how stare decisis applies in the current context, involving decisions issued by other divisions." *Arnold*, 198 Wn. App. at 847-48. Without deciding the contours of this new rule, the majority concludes that the harm created by disagreeing with *Taylor* and *Wheeler* would be too great. *Id.* The first concurrence does not mention "horizontal stare decisis," and instead states, "When it comes to whether our Supreme Court's 'incorrect and harmful' standard applies in this court, I agree with the reasoning of *Grisby v. Herzog*[9] that it does not." *Id.* at 850 (Siddoway, J., concurring). The second concurrence goes into much greater detail about "horizontal stare decisis," concluding that the divisions of the Court of Appeals should "follow the Supreme Court's lead in recognizing the importance of both the 'incorrect' and 'harmful' prongs of stare decisis." *Id.* at 853-54 (Pennell, J. concurring). The dissent's author "accepts the majority's [horizontal stare decisis]

---

[9] 190 Wn. App. 786, 808-09 & n.6, 362 P.3d 763 (2015).

15

rule," and "dissent[s] because the holdings of *Taylor* and *Wheeler* are incorrect and harmful." *Id.* at 855-56 (footnotes omitted).

We reject any kind of "horizontal stare decisis" between or among the divisions of the Court of Appeals. Statutes, court rules, prior case law of the Court of Appeals, and prior decisions of this court all compel a contrary conclusion.

First, the Court of Appeals exists within a framework defined by both Washington Constitution article IV, section 30 and chapter 2.06 RCW (Court of Appeals). When the Court of Appeals was created, the legislature defined it as a single court. But it also addressed the question of whether divisions of that single court could issue decisions that were in conflict. It assumed that such conflicts would arise. Rather than requiring the Court of Appeals to resolve those conflicts by one panel racing to a decision, or a second panel deferring to a prior decision, the Court of Appeals placed the duty to resolve those conflicts in the hands of this court, stating:

> [C]ases involving substantive issues on which there is a direct conflict among prevailing decisions of panels of the court [of appeals] or

between decisions of the supreme court . . . shall be appealed directly to the supreme court.

RCW 2.06.030(e). Thus, under the statute creating the Court of Appeals, conflicts are resolved not by stare decisis within that court, but by review in our court.

Our court rules say the same thing. Both RAP 4.2[10] and 13.4[11] address the process of obtaining review by this court. They explicitly state this court has a duty

---

[10] RAP 4.2, "DIRECT REVIEW OF SUPERIOR COURT DECISION BY SUPREME COURT," states:

> **(a) Type of Cases Reviewed Directly.** A party may seek review in the Supreme Court of a decision of a superior court which is subject to review as provided in Title 2 only in the following types of cases:
>
> . . . .
>
> (3) *Conflicting Decisions.* A case involving an issue in which there is a conflict among decisions of the Court of Appeals or an inconsistency in decisions of the Supreme Court.

[11] RAP 13.4, "DISCRETIONARY REVIEW OF DECISION TERMINATING REVIEW," states:

> **(b) Considerations Governing Acceptance of Review.** A petition for review will be accepted by the Supreme Court only:
>
> . . . .
>
> (2) If the decision of the Court of Appeals is in conflict with a published decision of the Court of Appeals.

17

to resolve conflicts within the Court of Appeals. If one division were required to defer to the decisions of another division, there would be no need for such a rule.

Washington court decisions follow this statute and those court rules. We recognize when there are conflicts in the Court of Appeals. We resolve them by granting review, not by telling the later panel to adhere to a decision of an earlier panel. *See, e.g., State v. Weatherwax*, 188 Wn.2d 139, 143, 392 P.3d 1054 (2017) ("This lack of statutory guidance has produced a conflict in the Court of Appeals."); *State v. Larson*, 184 Wn.2d 843, 847, 365 P.3d 740 (2015) ("We accepted review to resolve this conflict within the Court of Appeals between Division One and Division Two . . . ."); *State v. Jones*, 172 Wn.2d 236, 239, 257 P.3d 616 (2011) ("We affirm the decision of Division Two . . . and disavow Division Three's holding.").

Although Division Three's decision relies largely on cases from this court, none of them discusses the relationship between the divisions of the Court of Appeals.[12] Instead, they address the role of stare decisis in this court. Specifically, the Court of Appeals' opinion cites to our statement in *In re Rights to Waters of Stranger Creek* that stare decisis requires a "clear showing that an established rule is incorrect and harmful before it is abandoned." 77 Wn.2d 649, 653, 466 P.2d 508

---

[12] The cited cases also include arguments for an intradivision application of the doctrine of stare decisis, not an interdivision application. *See, e.g., State v. Stalker*, 152 Wn. App. 805, 810-12, 219 P.3d 722 (2009).

(1970). But that discussion in *Stranger Creek* was about overturning the precedent established by a prior Supreme Court case—not a split in the Court of Appeals divisions.

Previous Court of Appeals decisions have come to the same conclusion. In *Grisby*, that court held, "The various panels of the Court of Appeals strive not to be in conflict with each other because, like all courts, we respect the doctrine of stare decisis." 190 Wn. App. at 807. But while endorsing the value of consistency, the Court of Appeals—even in *Grisby*—has still ruled that prior Court of Appeals decisions constitute persuasive, not binding, authority on other divisions of the Court of Appeals. *See, e.g., McClarty v. Totem Elec.*, 119 Wn. App. 453, 469 n.8, 81 P.3d 901 (2003) (noting that while a decision from Division One was not binding authority, it "can still be persuasive"), *rev'd on other grounds*, 157 Wn.2d 214, 137 P.3d 844 (2006). *Grisby* itself continued its analysis to state,

> Where "the decision of the Court of Appeals is in conflict with another decision of the Court of Appeals," a basis exists for a petition for discretionary review by the Supreme Court. RAP 13.4(b)(2). If the most recent Court of Appeals opinion overruled conflicting Court of Appeals decisions and replaced them as binding precedent and controlling authority, no decisions would be in conflict and RAP 13.4(b)(2) would no longer serve any purpose as a basis for discretionary review. The Supreme Court settles the law when Court of Appeals decisions are in

19

conflict. It follows that two inconsistent opinions of the Court of Appeals may exist at the same time.

190 Wn. App. at 809 (footnote omitted).

In fact, "horizontal stare decisis" is not discussed in Washington cases before *Arnold*. The decisions discussing that theory were issued after the *Arnold* decision and all rejected that theory. *State v. Dennis*, 200 Wn. App. 654, 658 n.2, 402 P.3d 943 (2017) ("Dennis cites . . . *Arnold* . . . for its holding that we are bound by horizontal stare decisis to the decisions of our sister divisions. We respectfully disagree that *Payseno* [*v. Kitsap County*, 186 Wn. App. 465, 346 P.3d 784 (2015)] dictates our holding in this case. *Grisby* . . . , 190 Wn. App. [at] 808-11 . . . (The doctrine of stare decisis does not preclude one panel from the court of appeals from stating a holding that is inconsistent with another panel within the same division.")); *State v. Vazquez*, 200 Wn. App. 220, 226 n.4, 402 P.3d 276 (2017) ("Our precedents do not provide an agreed stare decisis analysis that governs requests to revisit prior appellate court decisions."); *Swanson Hay Co. v. Emp't Sec. Dep't*, 1 Wn. App. 2d 174, 209, 404 P.3d 517 (2017) ("As for the issue of whether we are required to apply the doctrine of stare decisis and our Supreme Court's 'incorrect and harmful' standard before disagreeing with Division One, there is room for debate on that issue. . . . This author has concluded that we are not."); *Worthington v. WestNET*, No. 48590-7-II, slip op. at 28 n.8 (Wash. Ct. App. Sept. 19, 2017) (unpublished),

20

https://www.courts.wa.gov/opinions/pdf/D2%2048590-7-II%20Order%20Amending%20Opinion.pdf (noting Worthington did not provide any argument or citation to legal authority to support his horizontal stare decisis argument).

As the amicus brief from the Washington Appellate Lawyers Association (WALA) explains, the divisions of the Court of Appeals have traditionally treated decisions from other divisions as persuasive rather than binding because it allows for "rigorous debate" and "improves the quality of appellate advocacy and the quality of judicial decision making." Amicus Curiae Br. of WALA at 5-6.

This is not to imply that the appellate court's concern with uniformity is misplaced. The United States Circuit Courts of Appeals deal with similar issues of consistency—both intracircuit and intercircuit conflicts—and have generally determined that one panel of a United States Circuit Court of Appeals should not be in conflict with another within that same circuit.[13] However, this procedural

---

[13] For examples in the Ninth Circuit, see *Hedlund v. Ryan*, 854 F.3d 557, 591-92 (9th Cir. 2017) (Bea, J., concurring) ("My agreement on this point should not be construed as a concession that [*State v.*] *McKinney*[, 185 Ariz. 567, 917 P.2d 124 (1996))] was correctly decided. It was not. But I recognize that, as a three-judge panel, we are bound to follow *McKinney* until it is overruled by the Supreme Court of a future en banc panel of our court. . . . As a result, I concur in the majority opinion in full."); *Avagyan v. Holder*, 646 F.3d 672, 677 (9th Cir. 2011) ("A three-judge panel cannot reconsider or overrule circuit precedent unless 'an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point.'" (quoting *Norita v. Commonwealth*, 331 F.3d 690 (9th Cir. 2003))); *see also Reilly v. City of Harrisburg*, 858

21

difference is due in part to the en banc process, which allows for review by a larger panel of circuit court judges.[14] Rather than this federal en banc process, this court resolves conflicts within the Court of Appeals. While intracircuit conflicts at the federal level are discouraged, intercircuit conflicts occur with some frequency[15] and,

---

F.3d 173, 177 (3d Cir. 2017) ("'the holding of a panel in a precedential opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a precedential opinion of a previous panel. Court en banc consideration is required to do so.' *Policy of Avoiding Intra-circuit Conflict of Precedent*, Internal Operating Procedures of the Third Circuit Court of Appeals § 9.1."); *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1287 (11th Cir. 2015) ("prior panel precedent rule requires that, where there are two or more inconsistent circuit decisions, we 'follow the earliest one'" (quoting *Hurth v. Mitchem*, 400 F.3d 857, 862 (11th Cir. 2005))); *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) ("We definitively rule today, in accordance with the almost universal practice in other federal circuits, that when faced with conflicting panel opinions, the earliest opinion must be followed." (citation omitted)).

[14] *See, e.g., United States v. Gasca-Ruiz*, 852 F.3d 1167-68 (9th Cir. 2017) (en banc) ("[w]e took this case en banc to resolve an intra-circuit conflict").

[15] See, for example, the 2016 Supreme Court opinions resolving intercircuit disputes: *Green v. Brennan*, __ U.S. __, 136 S. Ct. 1769, 195 L. Ed. 2d 44 (2016); *Husky International Electronics, Inc. v. Ritz*, __ U.S. __, 136 S. Ct. 1581, 194 L. Ed. 2d 655 (2016); *Lockhart v. United States*, __ U.S. __, 136 S. Ct. 958, 194 L. Ed. 2d 48 (2016); *Mathis v. United States*, __ U.S. __, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016); *Menominee Indian Tribe of Wisconsin v. United States*, __ U.S. __, 136 S. Ct. 750, 193 L. Ed. 2d 652 (2016); *Nichols v. United States*, __ U.S. __, 136 S. Ct. 1113, 194 L. Ed. 2d 324 (2016); *Simmons v. Himmelreich*, __ U.S. __, 136 S. Ct. 1843, 195 L. Ed. 2d 106 (2016); *United States v. Bryant*, __ U.S. __, 136 S. Ct. 1954, 195 L. Ed. 2d 317 (2016); and *Voisine v. United States*, __ U.S. __, 136 S. Ct. 2272, 195 L. Ed. 2d 736 (2016).

like our own court, the United States Supreme Court also considers these conflicts in its review of petitions for a writ of certiorari. *See* SUP. CT. R. 10.

To be sure, this approach can lead to conflicting decisions. For example, a single statewide agency can face conflicting obligations in different divisions. This court addressed a similar issue in *In re Personal Restraint of Smith*, 139 Wn.2d 199, 986 P.2d 131 (1999). In *Smith*, we interpreted a statute addressing how to calculate a convicted prisoner's earned early release time. A single, prior Division Three opinion had addressed the same issue and ruled against the Department of Corrections (DOC). DOC followed that decision in that individual Division Three case—but declined to change its statewide policy. Our court criticized DOC for that decision, holding that DOC should have followed that prior Division Three opinion partly because there were no other published Washington appellate court decisions that addressed those circumstances. *Id.* at 203 n.3. Statewide agencies and other entities cannot choose to ignore a published judicial decision. We recognize that the reality of conflicting decisions will create some confusion. However, our current system of rigorous debate at the intermediate appellate level creates the best structure for the development of Washington common law.

CONCLUSION

RCW 9A.44.130 includes convictions for violation of former RCW 9A.44.080 (1979) within its definition of "sex offense." Arnold is therefore required to register as a sex offender under that statute. In addition, one division of the Court of Appeals should give respectful consideration to the decisions of other divisions of the same Court of Appeals but one division is not bound by the decision of another division.

We therefore reverse.

George McCloud, J.

WE CONCUR:

Fairhurst, C.J.

Stephens, J.

Johnson, J.

Wiggins, J.

Madsen, J.

González, J.

Owens, J.

Yu, J.