# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  52369-8-II |
| Respondent, | |
| v. | |
| TANNER LEE CORYELL, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury found Tanner L. Coryell guilty of one count of second degree assault[1] and one count of fourth degree assault.[2]  Coryell appeals his conviction and sentence.

Coryell argues that, although the trial court applied the legal standard from settled case law, that standard is incorrect and harmful; thus, the trial court erred by not instructing the jury on a lesser included offense for the second degree assault charge.  Coryell also argues that his convictions for the second degree assault and fourth degree assault violate the prohibition against double jeopardy.  We adhere to our Supreme Court's precedent and hold that the trial court did not err by refusing to instruct the jury on a lesser included offense for the second degree assault charge.  We also hold that Coryell's convictions do not violate the prohibition against double jeopardy.  Accordingly, we affirm.

---

[1] RCW 9A.36.021(1)(g).

[2] RCW 9A.36.041(1).

FACTS

Coryell and Autumn Hart'Lnenicka were in a dating relationship and lived in an apartment together. One morning, an argument arose between the couple leading to a physical altercation, the details of which were disputed. The State charged Coryell with one count of second degree assault by strangulation and one count of fourth degree assault. The matter proceeded to a jury trial. At trial, three witnesses testified: Hart'Lnenicka, Coryell, and Officer Shon Malone of the Olympia Police Department.

Hart'Lnenicka testified that Coryell was sitting on a couch and using a PlayStation video game console in the living room. Hart'Lnenicka confronted Coryell about spending time with his ex-girlfriend. She grabbed the PlayStation, unplugged it, and threatened to break it. Coryell pulled the PlayStation out of her hands, set it down on the coffee table, and pushed Hart'Lnenicka down. After Coryell pushed Hart'Lnenicka down, he stood over her and placed both of his hands around her neck. Hart'Lnenicka testified that she could still talk and breathe when Coryell's hands were on her neck, and she did not feel like she was going to lose consciousness. Coryell then grabbed Hart'Lnenicka by her ankles and pulled her across the floor. Coryell then pulled Hart'Lnenicka out of the apartment and dragged her across the concrete outside of the apartment. During the dragging, Hart'Lnenicka's pants ripped from her crotch to her knees. Coryell left Hart'Lnenicka outside and locked the door.

Hart'Lnenicka testified that she was outside without her phone or keys, and her ripped pants made her feel "halfway naked." 1 Verbatim Report of Proceedings (VRP) at 45-46. She banged on the apartment door, and when Coryell opened it, she ran back inside to the laundry room and tried to hide. Coryell went over to Hart'Lnenicka, stood over her, and put his hands

2

around her neck while she was on the ground. Hart'Lnenicka testified that it took about 15 to 20 seconds from the time she got back inside to the time Coryell assaulted her at the laundry room.

At first, Hart'Lnenicka could still breathe. But Coryell then picked her up and, with his hands around her neck, slammed her head against the laundry room doors five times. Hart'Lnenicka testified that she could not breathe at all, she felt like she was going to lose consciousness, and she thought she was going to die. Coryell yelled in her face that he was not afraid to kill her.

Hart'Lnenicka was able to grab Coryell's glasses, scratching his face in the process. Hart'Lnenicka threw Coryell's glasses, causing Coryell to let go of her. Hart'Lnenicka fell to the ground and tried to crawl away. Coryell kicked Hart'Lnenicka on her left side. Hart'Lnenicka then ran to the bedroom and locked the door. Coryell was able to unlock the door and began to throw Hart'Lnenicka's clothes at her. Hart'Lnenicka grabbed her keys and phone, ran out the front door, and called 911.

Officer Malone, who responded to the scene, testified that he took photographs that showed bruising on Hart'Lnenicka's neck, a concrete burn on her back, and bruising on her left side. Photographs showed bruising on Hart'Lnenicka's neck in the shape of finger marks.

Officer Malone testified that he was trained on the signs of strangulation. He testified that, depending on the severity, strangulation can cause welts and bruising around the throat and neck areas. He also testified, "Sometimes you'll have broken blood vessels in the eyes or broken blood vessels along the neck, sometimes somewhere in the face." 1 VRP at 107. These injuries are also known as petechial hemorrhaging. However, Officer Malone testified that every case of strangulation presents different physical symptoms. On Hart'Lnenicka, Officer Malone observed

welts on both sides of her neck consistent with finger marks. Officer Malone also observed and photographed scratches on Coryell's face, arm, and hand. He did not observe petechial hemorrhaging on Hart'Lnenicka.

Coryell testified that he was sitting on the couch in the living room when Hart'Lnenicka came in and accused him of infidelity. Hart'Lnenicka went back into the bedroom, and Coryell turned on a video game on the PlayStation. Hart'Lnenicka came back into the living room, grabbed the PlayStation, unplugged it, and threatened to smash it. Coryell took the PlayStation from Hart'Lnenicka and placed it on the coffee table. Hart'Lnenicka then smacked Coryell across the face, causing his glasses to fly off his face. Hart'Lnenicka took Coryell's glasses, twisted the frames, popped out the lenses, and threw one of the lenses.

Coryell picked up one lens and tried to fix his glasses. Hart'Lnenicka then started hitting and scratching him, and he pushed her. Her heel hit the side of the wall, causing her to fall and scrape her back on the door handle before reaching the floor. After pushing her, Coryell testified he tried to repair his glasses. While doing this, Hart'Lnenicka ran into the bedroom, grabbed her phone and keys, and ran outside. Coryell testified that this was the last time he saw Hart'Lnenicka that day.

Coryell testified that the only time he put his hands on Hart'Lnenicka was to push her off while she was hitting him. When asked about the marks on Hart'Lnenicka's neck in the photographs, Coryell testified that he used his forearm to pin Hart'Lnenicka against a wall to get her to stop hitting him. Coryell denied choking Hart'Lnenicka.

In its closing argument, the State argued that a fourth degree assault occurred when Coryell pushed Hart'Lnenicka in the living room, and that a second degree assault occurred

when Coryell strangled Hart'Lnenicka at the laundry room. Regarding the second degree assault, Coryell requested a jury instruction for a lesser included offense, fourth degree assault.[3] Coryell argued that affirmative evidence supported an instruction for a lesser included fourth degree assault instruction because Officer Malone testified regarding the potential signs of strangulation and the lack of petechial hemorrhaging on Hart'Lnenicka.

The trial court reviewed Coryell's testimony. It noted that there was no evidence in the record from either Coryell or Officer Malone regarding the second degree assault showing that any events occurred other than the events as described by Hart'Lnenicka. The trial court stated further that Officer Malone's testimony regarding signs of strangulation did not rise to the level required for a lesser included instruction. It ruled that

> the testimony in this case is either that Ms. Hart'Lnenicka was strangled or she wasn't strangled. There's no testimony from Mr. Coryell that he put his hands around her neck but did not strangle her as that term is defined by law. So a lesser included of assault 4 would be improper.

2 VRP at 214.

The jury found Coryell guilty of both counts. At sentencing, Coryell argued that the two counts of assault violated the prohibition against double jeopardy because the acts were one continuous act of assault. The trial court ruled that the two convictions did not violate the prohibition against double jeopardy. Coryell appeals his judgment and sentence.

---

[3] Although Coryell refers to fourth degree assault as a "lesser included" offense, it is more accurately characterized as an "inferior degree" offense. RCW 10.61.003. We use the term lesser included offense for consistency.

ANALYSIS

I.  LESSER INCLUDED OFFENSE INSTRUCTION

Coryell argues that the trial court applied the incorrect legal standard when it denied his requested jury instruction for a lesser included offense.  He argues that we should overturn Supreme Court precedent requiring a defendant to show sufficient affirmative evidence that a defendant is entitled to a jury instruction on a lesser included offense "to the exclusion of the charged offense."  Br. of Appellant at 12 (quoting *State v. Fernandez-Medina*, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000).  Coryell then argues, applying what he contends is the proper standard for a lesser included offense, that the trial court erred by not instructing the jury on the lesser included offense of fourth degree assault on the second degree assault charge.  We follow our Supreme Court precedent and hold that the trial court did not err when denying Coryell's requested lesser included offense instruction.

In Washington, a defendant is entitled to an instruction on a lesser included offense when two conditions are met: (1) "each of the elements of the lesser offense must be a necessary element of the offense charged" and (2) "the evidence in the case must support an inference that the lesser crime was committed" (the *Workman* test).  *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).  The first condition is known as the legal prong, and the second is the factual prong.  *State v. Condon*, 182 Wn.2d 307, 316, 343 P.3d 357 (2015).  The legal prong is not disputed in this case.

For the factual prong, the rule employed in Washington is that a lesser included instruction is appropriate when the evidence supports an inference that only the lesser offense was committed, to the exclusion of the greater, charged offense.  *Condon*, 182 Wn.2d at 316.

When determining if the evidence was sufficient to support the lesser included offense instruction, courts view the evidence in the light most favorable to the party requesting the instruction. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000). A trial court considers all evidence presented, and this evidence must affirmatively establish the defendant's theory of the case, and not merely allow the jury to disbelieve evidence of guilt. *Fernandez-Medina*, 141 Wn.2d at 456. The affirmative evidence to support the lesser included offense requires more than the mere possibility that the jury disbelieves some of the State's evidence. *State v. Brown*, 127 Wn.2d 749, 755, 903 P.2d 459 (1995). Stated another way, the factual prong requires affirmative evidence which raises an inference that a defendant committed only the lesser included offense "to the exclusion of the charged offense." *Fernandez-Medina*, 141 Wn.2d at 455.

We review a trial court's decision regarding the factual prong for an abuse of discretion. *State v. Henderson*, 182 Wn.2d 734, 743, 344 P.3d 1207 (2015). A trial court abuses its discretion when its decision is based on an incorrect legal standard. *Henderson*, 182 Wn.2d at 743.

A.      *We Are Bound To Follow Supreme Court Decisions*

Coryell argues that Washington courts recognize two inconsistent standards for determining when an instruction for a lesser included offense is required. Specifically, Coryell argues that courts have moved away from the "proper" *Workman* test by adding the "to the exclusion of the charged offense" language. Br. of Appellant at 8. Coryell argues that the exclusion language is incorrect and harmful, and urges this court to overrule it. We are bound by the precedent of our Supreme Court.

7

Stare decisis is a fundamental principle that promotes predictable and consistent development of legal doctrines, encourages reliance on judicial decisions, and furthers the actual and perceived integrity of the judicial process. *State v. Barber*, 170 Wn.2d 854, 863, 248 P.3d 494 (2011). A court may depart from its own precedent. *In re Pers. Restraint of Arnold*, 198 Wn. App. 842, 846, 396 P.3d 375 (2017), *rev'd on other grounds*, 190 Wn.2d 136, 410 P.3d 1133 (2018). However, lower courts are bound to follow a higher court's decisions. *State v. Hairston*, 133 Wn.2d 534, 539, 946 P.2d 397 (1997); *Arnold*, 198 Wn. App. at 846. Accordingly, we are bound to adhere to the decisions of our Supreme Court, regardless of the merits of those decisions. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

As a result, Coryell's request for this court to overrule the Supreme Court's consistent recitation of the exclusion rule is misguided. We are required to follow the exclusion rule of the *Workman* test's factual prong as set out in *Workman*'s progeny. *Condon*, 182 Wn.2d at 316; *Fernandez-Medina*, 141 Wn.2d at 455-56. Accordingly, we do not decide whether the exclusion rule is properly part of the *Workman* test. Rather, we apply the law as set forth by the Supreme Court.

B.      *Coryell Does Not Meet the Factual Prong of the* Workman *Test*

Coryell argues that under his interpretation of the *Workman* test's factual prong, the trial court erred by refusing to give his lesser included jury instruction. Applying the proper test, we hold that the trial court did not abuse its discretion when denying Coryell's requested jury instruction.

This court views the evidence in a light most favorable to Coryell regarding the lesser included offense of fourth degree assault. *Fernandez-Medina*, 141 Wn.2d at 455-56. A trial

court should consider all the evidence presented at trial when determining whether an instruction should be given. *Fernandez-Medina*, 141 Wn.2d at 456. There must be some affirmative evidence to support that Coryell committed only the lesser included offense. *Brown*, 127 Wn.2d at 755.

At trial, Coryell denied that the second assault occurred. Although he explained Hart'Lnenicka's neck injuries by testifying that he had used his forearm to prevent her from hitting him, this testimony related only to the first event that was charged as fourth degree assault. Accordingly, Coryell's testimony did not provide any affirmative evidence regarding the second assault that would infer the lesser crime of fourth degree assault occurred. And Hart'Lnenicka's testimony regarding the second assault supports only a charge of second degree assault. Her testimony, if believed by the jury, was that Coryell strangled her. A review of Coryell's and Hart'Lnenicka's testimonies shows that the second assault either occurred as Hart'Lnenicka testified or did not occur at all.

Coryell further argues that Officer Malone's testimony that sometimes there is petechial hemorrhaging on a victim of strangulation, and that Hart'Lnenicka did not present signs of petechial hemorrhaging, is evidence to support that the strangulation did not occur during the second assault. But Coryell's argument is based on the *absence* of evidence, and as discussed above, affirmative evidence is required for a jury instruction. *Brown*, 127 Wn.2d at 755. The evidence did not support an instruction for fourth degree assault as a lesser included offense for the second degree assault charge. We hold that the trial court did not abuse its discretion when it ruled that Coryell was not entitled to a jury instruction on the lesser included offense.

## II. DOUBLE JEOPARDY

Coryell argues that his convictions for one count of second degree assault and one count of fourth degree assault violated the prohibition against double jeopardy. Specifically, Coryell argues that the two assaults were an uninterrupted series of events during a short period of time; thus, he can be convicted only of one count of second degree assault. We disagree.

We review double jeopardy claims de novo. *State v. Mutch*, 171 Wn.2d 646, 661-62, 254 P.3d 803 (2011). The constitutional guarantee against double jeopardy protects defendants from being punished multiple times for the same offense. US CONST. amend. V; WASH CONST. art 1, § 9; *Mutch*, 171 Wn.2d at 661.

When a defendant is convicted of two crimes under the same statute, we apply the unit of prosecution test. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 980-81, 329 P.3d 78 (2014). The unit of prosecution test examines the specific act or course of conduct the statute defines as the punishable act. *Villanueva-Gonzalez*, 180 Wn.2d at 980-81. Although second degree assault and fourth degree assault are set out in different statutes, the unit of prosecution test applies to convictions for different degrees of assault. *Villanueva-Gonzalez*, 180 Wn.2d at 981-82.

Assault is a course of conduct crime. *Villanueva-Gonzalez*, 180 Wn.2d at 984-85. Thus, if multiple assaultive acts constitute only one course of conduct, then double jeopardy protects against multiple convictions. *Villanueva-Gonzalez*, 180 Wn.2d at 985. There is no bright-line rule for when multiple assaultive acts constitute one course of conduct. *Villanueva-Gonzalez*, 180 Wn.2d at 985. In determining whether multiple assault acts constitute one course of conduct, we consider (1) the length of time over which the acts occurred, (2) the location of the acts, (3) the defendant's intent or motivation for the assaultive acts, (4) whether the acts were

10

uninterrupted, and (5) whether there was an opportunity for the defendant to reconsider his acts. *Villanueva-Gonzalez*, 180 Wn.2d at 985. No single "factor is dispositive, and the ultimate determination should depend on the totality of the circumstances, not a mechanical balancing of the various factors." *Villanueva-Gonzalez*, 180 Wn.2d at 985.

Coryell points to the facts of *Villanueva-Gonzalez* for support; however, the facts here are distinguishable. In *Villanueva-Gonzalez*, the defendant told his girlfriend to get out of a bedroom. 180 Wn.2d at 978. When she did not comply, the defendant pulled her out of the room and head butted her, causing her nose to break and begin bleeding profusely. *Villanueva-Gonzalez*, 180 Wn.2d at 978. He grabbed her by the neck and held her against a piece of furniture so that the girlfriend had difficulty breathing. *Villanueva-Gonzalez*, 180 Wn.2d at 978. A jury convicted Villanueva-Gonzales of second degree assault based on the head butt and fourth degree assault based on strangulation. *Villanueva-Gonzalez*, 180 Wn.2d at 978-79. The Supreme Court held that the defendant's actions constituted one course of conduct because they took place in the same location, over a short time period with no interruptions or intervening events, and with no evidence suggesting a different motivation, intent, or opportunity to reconsider his actions. *Villanueva-Gonzalez*, 180 Wn.2d at 985-86.

Here, considering the totality of the circumstances and the *Villanueva-Gonzalez* factors, we hold that Coryell's course of conduct was two separate assaults. First, the evidence is unclear regarding the length of time over which the acts occurred. Although Hart'Lnenicka testified that the length of time between getting back inside and the assault at the laundry room was about 15 or 20 seconds, she did not testify regarding the length of time she was outside of the apartment

after being drug out by Coryell. Second, the assaults occurred at two different locations, the first in the living room and the second at the laundry room.

Third, because his testimony did not acknowledge the second altercation near the laundry room doors, Coryell's express intent is unknown. However, regarding the first assault, Coryell's intent from his testimony seems to be that he wanted to prevent Hart'Lnenicka from destroying the PlayStation, and he wanted her to stop hitting him. Regarding the second assault Hart'Lnenicka testified that Coryell said, "I'm not afraid to kill you." 1 VRP at 48. Based on her testimony, Coryell's initial intent was to prevent Hart'Lnenicka from destroying the PlayStation. His intent at the laundry room appears simply to be an intent to cause harm to Hart'Lnenicka.

Fourth, the two assaults were interrupted by Coryell removing Hart'Lnenicka from the apartment and locking her out. Hart'Lnenicka then reentered the apartment, ran to the laundry room, and was assaulted by Coryell a second time. Hart'Lnenicka being locked out interrupted the assaultive events. Fifth, while Hart'Lnenicka was locked out of the apartment, Coryell had the opportunity to reconsider his acts. Despite this opportunity, Coryell assaulted Hart'Lnenicka a second time after she reentered the apartment.

Based on the totality of the circumstances surrounding Coryell's conduct, we hold that Coryell committed two separate assaults. Accordingly, we hold that double jeopardy is not implicated because Coryell's two assaults do not constitute a single course of conduct.

We affirm.

No. 52369-8-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Lee, A.C.J.

Cruser, J.