# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JEROME OTHELLO CLARY IV, | No. 85961-7-I |
| Appellant, | |
| v. | DIVISION ONE |
| STATE OF WASHINGTON, | PUBLISHED OPINION |
| Respondent. | |

FELDMAN, J. — Approximately two decades ago, a court convicted Jerome Othello Clary—who was a juvenile at the time—of child molestation in the first degree and entered an order of disposition revoking his right to possess firearms. Since then, Clary completed all the requirements to have his juvenile court file sealed under RCW 13.50.260, and a trial court entered an order to that effect. Under RCW 13.50.260(6)(a), which governs the legal effect of such an order, "the proceedings in the case shall be treated as if they never occurred." Years later, Clary petitioned the trial court to restore his right under Washington law to possess a firearm. The court denied the petition, finding that "a sealed juvenile conviction" is a "disqualifying offense" under RCW 9.41.041. Because the court's ruling is consistent with our Supreme Court's controlling analysis in *Barr v. Snohomish County Sheriff*, 193 Wn.2d 330, 440 P.3d 131 (2019), we affirm.

I

In June 2007, a court convicted Clary, then a juvenile, of child molestation in the first degree, a class A felony. The court also revoked his right to possess firearms. In August 2018, the court sealed his juvenile court file in an order entered pursuant to RCW 13.50.260.[1] It is undisputed that Clary satisfied all the requirements for sealing his conviction.

In June 2023, Clary petitioned the trial court to restore his right to possess a firearm ("Petition"). The court denied his Petition in October 2023, despite the sealing order, finding that the "sealing of a juvenile conviction does not make the conviction disappear under all circumstances and for all purposes." The court further found that "the plain language of RCW 9.41.041(1) prohibits [Clary] from petitioning for a restoration of his right to possess a firearm because he has been convicted of a disqualifying offense, sealing order notwithstanding."[2]

Clary appeals the denial of his Petition.

II

This appeal involves the intersection of two statutes. The first is RCW 9.41.041(1), which states:

> A person who is prohibited from possession of a firearm under RCW 9.41.040 may not petition a court to have the person's right to possess a firearm restored *if the person has been convicted* or found not guilty by reason of insanity of: A felony sex offense; a class A

---

[1] The legislature amended RCW 13.50.260 after the court sealed Clary's juvenile file, but the amendments do not affect the legal arguments in this case. Therefore, this opinion cites to the current version of the statute.

[2] Although Clary filed his Petition under RCW 9.41.040(4), the legislature subsequently recodified the provisions at issue from former RCW 9.41.040 to current RCW 9.41.041, which is the statute to which the court referred. LAWS OF 2023, ch. 295, § 4. Because any amendments are not material to the legal arguments in this case, this opinion again cites the current version of the statute.

felony[3]; or a felony offense with a maximum sentence of at least 20 years.

(Emphasis added.) The second statute at issue is RCW 13.50.260(6)(a), which states:

> If the court enters a written order sealing the juvenile court record pursuant to this section, it shall, subject to RCW 13.50.050(13), order sealed the official juvenile court record, the social file, and other records relating to the case as are named in the order. *Thereafter, the proceedings in the case shall be treated as if they never occurred*, and the subject of the records may reply accordingly to any inquiry about the events, records of which are sealed. Any agency shall reply to any inquiry concerning confidential or sealed records that records are confidential, and no information can be given about the existence or nonexistence of records concerning an individual.

(Emphasis added.) Against this statutory backdrop, the issue here is whether the trial court correctly concluded that a sealed, juvenile, class A felony conviction disqualifies Clary from restoring his right to possess a firearm under state law—as RCW 9.41.041(1) provides—even though RCW 13.50.260(6)(a) states that sealed juvenile case proceedings "shall be treated as if they never occurred."

Our Supreme Court's opinion in *Barr* is controlling on this point. Similar to Clary, Barr was convicted of two class A felony offenses when he was a juvenile. 193 Wn.2d at 333. After obtaining a court order sealing the juvenile files, like Clary did here, Barr applied for a concealed pistol license (CPL) from the County sheriff. *Id.* Under RCW 9.41.070(1)(a), the sheriff was required to deny the CPL application if Clary was "'prohibited from possessing a firearm under federal law.'" *Id.* That issue, in turn, was controlled by 18 U.S.C. § 922(g)(1), which prohibits any person who "'has been convicted in any court of, a crime punishable by

---

[3] This category encompasses child molestation in the first degree as a crime of violence. RCW 9.41.040; RCW 9.41.010(39)(a); former RCW 9.41.010(6)(a).

3

imprisonment for a term exceeding one year' . . . to . . . 'possess . . . any firearm.'" *Id.* at 335. Thus, *Barr* involved the same core issue presented here: whether Barr was prohibited from possessing a firearm because he "has been convicted" of a disqualifying offense even though RCW 13.50.260(6)(a) states that sealed juvenile case proceedings "shall be treated as if they never occurred."

Critical here, the Supreme Court held that the County sheriff was not required to issue Barr a CPL license. *Id.* at 340. Responding specifically to Barr's reliance on RCW 13.50.260(6)(a), the Court stated, "[w]hile the sealing order makes those convictions invisible to most people, *they do still exist*." *Id.* at 337 (emphasis added). The Court explained, "This conclusion is evident from the simple fact that the sealing order will be nullified by '[a]ny charging of an adult felony subsequent to the sealing.' If that happens, the convictions do not somehow come back into existence; they merely come back into public view." *Id.* (quoting RCW 13.50.260(8)(b)). The Court then concluded, "Barr's juvenile adjudications are clearly convictions that do still exist as a matter of state law, the sealing order notwithstanding." *Id.* at 338.

Like Barr, Clary asserts that because RCW 13.50.260(6)(a) requires that sealed proceedings be treated as though they never occurred, his juvenile conviction for child molestation in the first degree cannot disqualify him from having his firearm rights restored. That argument fails under *Barr*. Applying *Barr*, the sealing order makes Clary's conviction invisible to most people, but it does still exist as a matter of state law. Consequently, under RCW 9.41.041(1), Clary is and remains a person who "has been convicted" of a class A felony, and his prior

4

conviction disqualifies him from petitioning for restoration of his firearm rights under state law. The trial court, therefore, properly denied Clary's petition for restoration of his firearm rights under RCW 9.41.041(1).

In relying on *Barr* as we do, we recognize that the Court there stated, "We express no opinion on Barr's right to possess firearms as a matter of state law." *Id.* at 340. But while the Court expressed no opinion on that issue, its reasoning nonetheless compels our holding here. The disqualifying statute in *Barr* asked whether Barr "has been convicted" of certain crimes. *Id.* at 335 (quoting 18 U.S.C. § 922(g)(1)). The disqualifying statute at issue here similarly asks whether Clary "has been convicted" of certain crimes. RCW 9.41.041(1). If a juvenile conviction that has been sealed under RCW 13.50.260(6)(a) still exists for purposes of the "has been convicted" provision in 18 U.S.C. § 922(g)(1)—as our Supreme Court held in *Barr*—then it also exists for purposes of the "has been convicted" provision in RCW 9.41.041(1).

Clary's contrary argument is not entirely without merit. As the dissenting opinion explains, Clary's argument is consistent with the plain language of RCW 13.50.260(6)(a), which unequivocally mandates that sealed juvenile case proceedings "shall be treated as if they never occurred." But *Barr* is controlling on this point, "and we are bound to follow that controlling precedent." *State v. Wallin*, 125 Wn. App. 648, 664, 105 P.3d 1037 (2005). And while we are not bound by an opinion of another division of the court of appeals (*see In re Pers. Restraint of Arnold*, 190 Wn.2d 136, 154, 410 P.3d 1133 (2018)), our holding here is consistent with Division Two's recent opinion in *McIntosh v. State*, 30 Wn. App. 2d 224, 233-

34, 544 P.3d 559, *review denied*, 551 P.3d 434 (Wash. 2024), which similarly holds, "under [*Barr*], McIntosh's juvenile convictions for class A felony sex offenses still exist under state law and, therefore, he is disqualified from petitioning for restoration of firearm rights under former RCW 9.41.040(4)(a)." *McIntosh* thus confirms that the analysis in *Barr* applies equally to Clary's petition to restore his right to possess firearms under state law. Consistent with *Barr*, as well as *McIntosh*, the trial court here correctly denied Clary's petition for restoration of firearm rights.

Affirmed.

Feldman, J.

I CONCUR:

Birk, J.

No. 85961-7-I State of Washington v. Jerome Othello Clary IV

DÍAZ, J. (dissenting) — The issue before this court is whether a sealed, juvenile, class A felony conviction disqualifies Clary from restoring his *state* right to possess a firearm under RCW 9.41.041(1), despite the fact that RCW 13.50.260(6)(a) mandates that sealed juvenile case proceedings "shall be treated as if they never occurred[.]" The issue before this court is *not* whether Clary is now or ever will be actually eligible to possess a firearm under all laws that bind him. He expressly concedes he is not eligible to possess a firearm under current federal law. Still, this case is significant because of how this court, and perhaps our Supreme Court ultimately, interprets the legislature's sweeping mandate to "treat" juvenile cases (with limited exceptions) "as if they never occurred," when a juvenile offender does everything we ask of them.

My esteemed colleagues in the majority agree that this case presents the "intersection" of these statutes and offer a well-reasoned analysis of Barr v. Snohomish County Sheriff, 193 Wn.2d 330, 440 P.3d 131 (2019), which they believe controls the disposition of this case. I respectfully dissent because—as I interpret and would harmonize the statutes, and as I understand Barr—Clary is not disqualified from the restoration of this state constitutional right. And, thus, I would reverse and remand this matter for the trial court to grant Clary the relief he seeks.

I. Supplemental Statement of Applicable Law

Because the majority accurately states the facts and procedural posture of Clary's case, I do not restate them here. Additional background as to RCW 9.41.041, RCW 13.50.260, and principles of statutory interpretation, however, is

warranted.

RCW 9.41.041(1) prohibits a person who "has been convicted" of "a class A felony" (among others) from petitioning a court for restoration of their firearm rights. If one is not so disqualified, they may petition a court to restore their rights if they meet certain requirements. RCW 9.41.041(2). If a petitioner meets all the requirements, the law allows the superior court no discretion and requires it to grant the petition. State v. Swanson, 116 Wn. App. 67, 75, 65 P.3d 343 (2003).

Here, *if* Clary is not among those people barred by RCW 9.41.041(1) because of a prior class A felony, there is no dispute he otherwise qualifies for restoration under RCW 9.41.041(2).

RCW 13.50.260(4)(a) requires courts to grant motions to seal juvenile records if the party making the motion meets certain requirements. These requirements include proving that the movant has spent five consecutive years in the community without committing an offense since the release or entry of disposition in their juvenile case, has no pending criminal cases, and has paid restitution in full, among other requirements. Id. Though other crimes are exempted, there is no exclusion in the statute simply because one is convicted of a class A juvenile felony. Id. at (4)(a)(v) (excluding certain sex crimes).

Here, as the majority notes at page 2, it is undisputed that Clary qualified for the sealing of his juvenile case record and that, indeed, the court sealed his juvenile record before he petitioned for the restoration of his state rights.

Critically, RCW 13.50.260(6)(a) mandates that once a court has ordered a juvenile court record is sealed, "the proceedings in the case *shall* be *treated as if*

2

*they never occurred*, and the subject of the records may reply accordingly to any inquiry about the events[.]" (Emphasis added.)

Finally, as to the relevant principles of statutory interpretation, "[a]n appellate court reviews issues regarding statutory construction de novo." State v. Hahn, 83 Wn. App. 825, 831, 924 P.2d 392 (1996). "The court's duty is to ascertain and give effect to the intent and purpose of the Legislature." Id. "The surest indication of legislative intent is the language enacted by the legislature, so if the meaning of a statute is plain on its face, we 'give effect to that plain meaning.'" State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010) (quoting State v. Jacobs, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)).

"[I]t is settled that the plain meaning of a statute is determined by looking not only 'to the text of the statutory provision in question,' but also to 'the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" State v. Hurst, 173 Wn.2d 597, 604, 269 P.3d 1023 (2012) (quoting Ervin, 169 Wn.2d at 820). "Although a statute is ambiguous if it is susceptible to two or more reasonable interpretations, a statute is not ambiguous merely because different interpretations are conceivable." Hahn, 83 Wn. App. at 831.

"Another well-settled principle of statutory construction is that 'each word of a statute is to be accorded meaning.'" State v. Roggenkamp, 153 Wn.2d 614, 624, 106 P.3d 196 (2005) (quoting State ex rel. Schillberg v. Barnett, 79 Wn.2d 578, 584, 488 P.2d 255 (1971)). "'[T]he drafters of legislation . . . are presumed to have used no superfluous words and we must accord meaning, if possible, to every word

in a statute.'" Id. (alteration in original) (quoting In re Recall of Pearsall-Stipek, 141 Wn.2d 756, 767, 10 P.3d 1034 (2000)).

"This court assumes the legislature does not intend to create inconsistent statutes. 'Statutes are to be read together, whenever possible, to achieve a harmonious total statutory scheme . . . which maintains the integrity of the respective statutes.'" Am. Legion Post No. 149 v. Dep't of Health, 164 Wn.2d 570, 588, 192 P.3d 306 (2008) (quoting State ex rel. Peninsula Neighborhood Ass'n v. Dep't of Transp., 142 Wn.2d 328, 342, 12 P.3d 134 (2000)). In other words, "[t]his court . . . seeks to construe statutes so as to avoid inconsistency." State v. Bash, 130 Wn.2d 594, 602, 925 P.2d 978 (1996); see also Jackson v. Fenix Underground, Inc., 142 Wn. App. 141, 145, 173 P.3d 977 (2007) ("When interpreting a statute, the court should read it in its entirety, and each provision must be harmonized with other provisions, if at all possible[.]").

## II.    Discussion

The majority acknowledges that this appeal involves the "intersection" of RCW 9.41.041(1) and RCW 13.50.260(a). Majority at 2. The majority also recognizes that Clary's reliance on the latter is "consistent with [its] plain language" and particularly with its "unequivocal[] mandate[] that sealed juvenile case proceedings 'shall be treated as if they never occurred.'" Id. at 5 (quoting RCW 13.50.260(a)). Nonetheless, the majority concludes it must apply Barr's various holdings and adopt the reasoning therein, even as the majority recognizes our Supreme Court expressly declined to reach the issue here. Id. at 4-5.

Respectfully, I believe we first must undertake a de novo review of RCW

13.50.260 (and its statutory scheme) to determine the legislature's intent. <u>Hanh</u>, 83 Wn. App. at 831. And then, I believe we must clarify the narrow holding in <u>Barr</u>, which I respectfully believe does not extend to this issue. Finally, we must attempt to harmonize RCW 13.50.260 and RCW 9.41.041(1), in the event they are in tension. <u>Jackson</u>, 142 Wn. App. at 145.

A.     <u>The Legislature's Intent in RCW 13.50.260(6)(a)</u>

To ascertain the intent of the juvenile sealing statute, this court must determine not only the meaning of the plain language of RCW 13.50.260(6)(a) itself, but also its statutory scheme as a whole. <u>Ervin</u>, 169 Wn.2d at 820; <u>Hurst</u>, 173 Wn.2d at 604. Again, RCW 13.50.260(6)(a) directs that all "proceedings" in a sealed juvenile case must be "treated" as if they never "occurred." Where a statute does not define a nontechnical word, we may look to the dictionary for guidance. <u>State v. Chester</u>, 82 Wn. App. 422, 427, 918 P.2d 514 (1996).

A "proceeding" is "[t]he regular and orderly progression of a lawsuit, including *all acts and events* between the time of commencement and the entry of judgment . . . conducted by a court or other official body." BLACK'S LAW DICTIONARY 1459 (12th ed. 2024) (emphasis added). The breadth of the term palpably includes all events in a juvenile case, from the charging of an offense, to a conviction, disposition and post-disposition monitoring. To "treat" is to "deal with: handle." MERRIAM-WEBSTER ONLINE DICTIONARY (last visited Sep. 13, 2024), https://www.merriam-webster.com/dictionary/treat. To "occu[r]" means to "happe[n]" or "tak[e] place." BLACK'S LAW DICTIONARY 1295 (12th ed. 2024). The relevant, though unstated, actor in this provision is the court, who, e.g., is

presented with a petition.

Taken together, then, RCW 13.50.260(6)(a) plainly requires Washington courts to deal with or handle "all acts and events," including a conviction, within a sealed juvenile case as though they did not happen. Notably, there is no qualification or limitation to that mandate regarding how courts should "treat" such sealed files in RCW 13.50.260(6)(a) itself.[1]

Instead, we must turn to the remainder of the statute to find exceptions to RCW 13.50.260(6)(a)'s sweeping mandate. And, in the subsections that follow, the legislature did enumerate exceptions to that mandate, i.e., circumstances in which juvenile records *do* remain legally accessible or usable.[2] Critically, there is no exception in those subsequent subsections of RCW 13.50.260 or elsewhere which permit a court to access, use, or consider sealed juvenile convictions when

---

[1] The following clause of RCW 13.50.260(6)(a) confirms its breadth, when it states that "the subject of the records may reply accordingly to *any* inquiry about *the events*, records of which are sealed." RCW 13.50.260(6)(a) (emphasis added). There is no qualification about when a former juvenile respondent can so respond. Indeed, here, Clary "accordingly" indicated, under penalty of perjury, that he had "never been convicted" of a class A felony. The State does not challenge the propriety of this response.

[2] The statute provides for a total of seven such circumstances. First, the department of licensing may release information from a sealed record though, tellingly, only to the extent necessary to comply with federal law. RCW 13.50.260(6)(c). Second, with some exceptions, a court may permit the subject of sealed records to inspect his own record upon motion. RCW 13.50.260(7). Third, a court may reopen a sealed record if the juvenile is adjudicated for a subsequent juvenile offense or if the juvenile commits a subsequent adult felony. RCW 13.50.260(8)(a); RCW 13.50.260(8)(b). Fourth, the state patrol may disclose a sealed record to non-Washington agencies for firearms processing and purchasing purposes. RCW 13.50.260(8)(e). Fifth, a litigant may use the information in a sealed record in an action for liability against an employer in limited circumstances. RCW 13.50.260(9). Lastly, county clerks may contact juveniles and others to collect outstanding legal financial obligations even after sealing. RCW 13.50.260(10).

presented with a firearms restoration petition. The legislature could have chosen to include the firearm restoration process as an exception to RCW 13.50.260(6)(a), but it did not.

This court must respect the legislature's decisions as to the language it chooses to include or omit because we "must not add words where the legislature has chosen not to include them." Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003).

In State v. Linville, for example, our Supreme Court considered whether the State could join non-enumerated offenses as predicate acts to establish a pattern of criminal profiteering activity. 191 Wn.2d 513, 516, 423 P.3d 842 (2018). The "criminal profiteering" statute contained a list of 46 crimes. Id. at 520. The Court held that, "[u]nder the interpretive rule of 'expressio unius,' all other crimes were impliedly excluded." Id. That is, "[b]ecause of that legislative decision, those other crimes cannot be considered profiteering crimes." Id. at 520-21. The Court explained that a "controlling rule of statutory interpretation in a situation like this is 'expressio unius est exclusio alterius'—the express inclusion of specific items in a class impliedly excludes other such items that are not mentioned." Id. at 520; see also State v. LG Elecs., Inc., 186 Wn.2d 1, 9, 375 P.3d 636 (2016) (holding that "[u]nder the age old rule expressio unius est exclusio alterius, '[w]here a statute specifically designates the things upon which it operates, there is an inference that the Legislature intended all omissions.'") (quoting In re Pers. Restraint of Hopkins, 137 Wn.2d 897, 901, 976 P.2d 616 (1999)); State v. Bacon, 190 Wn.2d 458, 466-67, 415 P.3d 207 (2018) (declining to fill an alleged omission to a statutory list of

7

specific exemptions).   Accordingly, I would hold that RCW 13.50.260(6)(a)'s sweeping mandate and its subsequent exceptions thereto together "impliedly exclude[] other such [exceptions] that are not mentioned" and permits us to infer "that the Legislature intended all omissions." Linville, 191 Wn.2d at 520; LG Elecs., Inc., 186 Wn.2d at 9.

In turn, applying these canons of construction, I believe RCW 13.50.260 requires Washington courts to "handle" a sealed juvenile conviction as if it never "happened," unless and only unless one of the specified exceptions applies. Because the firearm restoration process is not such an exception, a court must treat a sealed juvenile conviction as if it did not happen.

B.    *Barr* Does Not Extend to this Issue

Despite recognizing RCW 13.50.260(6)(a)'s "unequivocal[] mandate[]," majority at page five, the majority agrees with the State that Clary cannot restore his Washington right to a firearm because his "disqualifying class A conviction continues to *exist* for purposes of determining his eligibility to restore his firearm rights despite the fact that it is sealed." [3]   Majority at 4 (emphasis added).   The majority asserts Barr "is controlling on this point."  Majority at 3.  I believe that the State oversimplifies the holding in Barr and that the majority—in its rightful desire to faithfully follow controlling precedent—understandably overstates the reach of

_____

[3] The State additionally argues that the trial court did not err by denying Clary's petition because his sealed felony conviction makes him ineligible for the right to *possess* a firearm under federal law.  However, Clary has made clear that he does not seek through his petition to restore any federal right.  Although Clary concedes that he is "ineligible to *possess* firearms under federal law," that fact is immaterial because he "merely is petitioning for an order restoring his [right] to possess a firearm under Washington *state* law."  (Emphasis added).

8

Barr's reasoning. A fuller recitation of Barr is needed.

In Barr, a court convicted Barr of two class A felony offenses when he was a juvenile. 193 Wn.2d at 333. Barr applied for a concealed pistol license (CPL) from the county sheriff, after obtaining a court order sealing the juvenile files. Id. The sheriff denied his application because he determined that, under federal law, those class A felonies—"whether sealed or not"—disqualified him from the right to a CPL. Id. at 333-34. Thus, the issue before our Supreme Court was whether the Sheriff was required to issue *specifically* a CPL to an individual whose sealed juvenile record includes adjudications for class A felonies. Id. at 332.

Our Supreme Court agreed with the sheriff and held that it was not required to issue the CPL to Barr because the Washington statute regulating CPLs expressly requires the issuing authority to deny the CPL application of an applicant "who 'is prohibited from possessing a firearm under federal law.'" Id. (quoting RCW 9.41.070(1)(a)); see also id. at 335 (noting the issuing authority is required to deny such an application) (quoting RCW 9.41.070(2)(b)). And at least one federal law prohibits any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess . . . any firearm." Id. (quoting 18 U.S.C. § 922(g)(1)).

The court further explained that, under the federal law in question, such an applicant (convicted of a crime punishable by more than a year of imprisonment) is disqualified from possessing a firearm, unless certain subsequent events follow. Id. at 335. Specifically, the statute states that "'[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil

9

rights restored shall not be considered a conviction for purposes of this chapter.'"

Id. (quoting 18 U.S.C. § 921(a)(20)).

In other words, the court laid out a "straightforward" two-part inquiry to determine whether a person is prohibited from possessing a firearm under federal law. Id. at 335-36. First, the court must ask whether an applicant has been convicted of a crime punishable by more than one year of imprisonment under Washington law, and second, whether these "subsequent events (expungement, setting aside, pardon, or restoration of civil rights) have occurred." Id.

Barr argued that a "subsequent event" had occurred because his juvenile records were sealed and, under RCW 13.50.260(6)(a), "the proceedings in the case shall be treated as if they never occurred." Id. at 336-37. The court responded that the "problem with this argument is that it sidesteps the required *federal* statutory analysis," where "*the question is not how a conviction is currently treated by state law*." Id. at 337 (emphasis added). It was in the context of its federal statutory analysis that the court stated that, "[w]hile the sealing order makes those convictions invisible to most people, they do still exist" and that sealing is "not equivalent to an expungement" or other "subsequent events" under the second step of the inquiry. Id. at 337-38.

Importantly, our Supreme Court concluded its opinion by stating:

This case presents a narrow question to which we provide a narrow answer. The Sheriff was not required to issue Barr a CPL because, the sealing order notwithstanding, Barr's class A felony adjudications are predicate, disqualifying convictions *for purposes of 18 U.S.C. § 922(g). We express no opinion on Barr's right to possess firearms as a matter of state law.*

Id. at 340 (emphasis added).

Clary's appeal is distinguishable from Barr on cascading levels. He is not seeking a CPL and, thereby, not triggering the "*federal* statutory analysis," which is required by the state statute regulating CPL applications. Id. at 337 (emphasis added). As a result, there is no "two part" inquiry, where this court need be concerned (a) with the metaphysical question whether Clary's conviction still "exists" under Washington law after being sealed, id. at 337, or (b) whether a specific type of "subsequent event" occurred, such as expungement, ending a conviction's "existence." Id. at 336. The sole question here—expressly not reached by the court in Barr—is whether juvenile convictions which have been sealed nonetheless preclude someone from restoring their rights "as a matter of" *Washington* law, not federal law. Id. at 440. Our plain language analysis above answers that separate question.

In this way, I read Barr more narrowly than the majority, as well as my esteemed colleagues who issued McIntosh v. State, 30 Wn. App. 2d 224, 225, 544 P.3d 559 (2024), review denied, 3 Wn.3d 1010, 551 P.3d 434 (2024). I recognize that the court in McIntosh confronted effectively the same issue as this case, and that the decision is thus on point. However, I respectfully believe that the majority and my colleagues in McIntosh interpret Barr in a way that both (a) does not account for RCW 13.50.260(6)(a)'s sweeping mandate and (b) fails to harmonize the firearms restoration statute with the juvenile sealing statute.[4] I address each in turn after further discussing McIntosh.

---

[4] Decisions of other divisions of the Washington Court of Appeals are persuasive authority and are not binding on this court. In re Pers. Restraint of Arnold, 190 Wn.2d 136, 150-52, 154, 410 P.3d 1133 (2018).

In McIntosh, the appellant sought to restore his state firearm rights after sealing two juvenile class A felony convictions. 30 Wn. App. 2d at 226 & 229. As Clary does here, McIntosh argued that RCW 13.50.260(6)(a) requires a court to treat his sealed juvenile cases as though they never occurred. Id. at 225 & 229. Our colleagues interpreted that argument to mean McIntosh was arguing "essentially that the [juvenile convictions] no longer exist." Id. at 229. In turn, the court held that—under a reading of Barr similar to the majority's—convictions in a sealed juvenile proceeding "still exist under state law and, therefore, [appellant] was disqualified from petitioning for restoration of firearm rights under former RCW 9.41.040(4)(a)." Id. at 233-34; Majority at 4.

As explained above, I respectfully disagree with this understanding of Barr's reach. Our Supreme Court in Barr undertook a "straightforward" two-part analysis exploring whether the conviction still "existed" because that is what the state CPL statute required. 193 Wn.2d at 335. There is no such requirement here. The question is not whether a sealed conviction "exists" under federal law, but what our state legislature meant in passing both RCW 13.50.260 and RCW 9.41.041.

Rather than address that issue, the court in McIntosh nowhere explains what RCW 13.50.260's mandate to "treat[] [sealed juvenile convictions] as is they never occurred" might mean if the convictions "still exist under state law." McIntosh instead surveys only the circumstances when the mandate does *not* apply. 30 Wn. App. 2d at 233 (reviewing how the convictions are accessible under RCW 13.50.260(8)(b)-(e) and RCW 9.94A.525(2)(a)). By doing so, the court renders the mandate meaningless, which we should seek to avoid. Roggenkamp, 153 Wn.2d

12

at 624. Moreover, as also explained above, the failure to give effect to its mandate effectively reads into the Washington law *another* way in which the conviction may be accessed or used, which we should also seek to avoid. State v. Taylor, 97 Wn.2d 724, 729, 649 P.2d 633 (1982) (holding that court should not "arrogate to ourselves the power to make legislative schemes more perfect, more comprehensive and more consistent").

What I believe this court must do, instead, is afford each provision meaning, while harmonizing the two statutes to avoid inconsistency if any. See Am. Legion Post No. 149, 164 Wn.2d at 588; Jackson, 142 Wn. App. at 146-47.

C.    Harmonizing RCW 9.41.041(1) and RCW 13.50.260

I begin again with the meaning of the plain language of the firearms restoration statute. RCW 9.41.041(1) states that a person is disqualified from petitioning for restoration if that person "has been convicted" of a class A felony. This phrase is written in a grammatical form known as "present perfect continuous" or "present perfect progressive." The verb tense is used to capture something that started in the past and is continuing at the present time.[5] In other words, the phrase "has been convicted of" refers to the present *existence* of a past conviction.

As aforementioned, the existence of a sealed juvenile class A felony adjudication may be relevant in a distinguishable context, like federal firearms law, such as in Barr. But, it does not dictate or conflict with how a state court should "deal with" or "treat" such a sealed conviction, which is a different task. To interpret RCW 9.41.041(1) consistently with RCW 13.50.260(6)(a)—which again makes no

---

[5] THE CHICAGO MANUAL OF STYLE §§ 5.136, 5.139 (18th ed. 2024)

13

mention of firearms restoration—I would hold that these words do not implicate or apply to how a state court should "handle" a sealed juvenile proceeding, leaving the interpretation of RCW 13.50.260(6)(a) provided above undisturbed.

Had the legislature intended to circumvent the specifications of the sealing statute, it could have chosen to phrase RCW 9.41.041(1)'s prohibition more explicitly.  For instance, it could have chosen to legislate that persons who "have *ever* been convicted" of a class A felony are prohibited from possessing a firearm, but it did not.[6]  State v. Larson, 184 Wn.2d 843, 849, 365 P.3d 740 (2015) (finding "illustrative examples were intended to limit the scope of the statute") (emphasis omitted); Cent. Puget Sound Reg'l Transit Auth. v. Airport Inv. Co., 186 Wn.2d 336, 346, 376 P.3d 372 (2016) ("we presume the legislature says what it means and means what it says.").

Therefore, in light of the meaning of the words the legislature did choose to include, and in order to harmonize this statute with RCW 13.50.260, I would hold that RCW 9.41.041(1) encompasses only adult convictions or juvenile cases that have not been sealed.  In that way, RCW 9.41.041 is not rendered meaningless.  Roggenkamp, 153 Wn.2d at 624.

---

[6] Before the prohibition concerning class A offenses was recodified to current RCW 9.41.041—when it was a provision within former RCW 9.41.040— all versions of its language included the word "*previously*. . . has been convicted."  However, the omission of this word in the current version does not change my analysis.

### III.  CONCLUSION

For the reasons above, I respectfully dissent from my esteemed colleagues in the majority.


Díaz, J.
_____