IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37976-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| SCOTT EUGENE RIDGLEY, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Washington's privacy act, chapter 9.73 RCW, provides a method for narcotics investigators to record private communications without obtaining either a warrant or full-party consent. This "self-authorizing" provision of the privacy act allows for flexibility, but it also demands strict adherence. Among other things, self-authorization must be based on a written report specifying the names of the officers authorized to intercept, transmit, and record the private communication.

During a narcotics investigation of Scott Ridgley, law enforcement obtained two undercover recordings utilizing the privacy act's self-authorizing provision. The reports that accompanied the self-authorizations failed to specify the names of all officers expected to be involved in the undercover recordings. By omitting this information, the self-authorizing reports failed to meet the strict terms of the privacy act. The authorizations were therefore invalid and evidence related to the undercover recordings should have been suppressed from Mr. Ridgley's trial.

We remand this case to the trial court for a determination of whether introduction of the undercover recordings prejudiced the outcome of Mr. Ridgley's case.

FACTS

The Lewis County Joint Narcotics Enforcement Team (JNET)[1] suspected Scott Ridgley of dealing methamphetamine. JNET officers organized two controlled buys and a search at Mr. Ridgley's residence to confirm their suspicions. For each of the two buys, officers utilized a confidential informant equipped with a body wire. The informant turned over methamphetamine after each controlled buy.

JNET did not obtain a warrant for the informant's body wire. Instead, it relied on a provision of Washington's privacy act, sanctioning undercover narcotics recordings based on self-authorization by a law enforcement agency. Detective Chad Withrow of the Centralia Police Department prepared a report as part of his application for the self-authorizations. Carl Nielsen, chief of police of the Centralia Police Department, signed the authorizations.[2] Each of Detective Withrow's reports identified "Detective Withrow,

---

[1] The Centralia Police Department, Chehalis Police Department, and Lewis County Sheriff's Office cooperated to establish JNET.

[2] As chief of police, Carl Nielsen was "responsible for administering and managing the Centralia Police Department" and its three divisions, including special operations. Clerk's Papers at 91. JNET was organized under Special Operations.

and/or any other officers participating in this investigation" as the officers authorized to intercept, transmit, or record the communication. Clerk's Papers (CP) at 43, 49. The subsequent warrant for Mr. Ridgley's residence referenced the wire intercepts.

The State charged Mr. Ridgley with two counts of methamphetamine delivery, one count of methamphetamine possession with the intent to deliver, one count of first degree unlawful firearm possession, and one count of maintaining a premises or vehicle for using controlled substances. Prior to trial, Mr. Ridgley filed a motion to suppress. Among other things, he argued the wire intercept authorizations were invalid because their accompanying reports failed to name all the officers participating in the undercover recordings. The trial court denied the motion. A jury then convicted Mr. Ridgley on all counts except for the firearms charge. Mr. Ridgley timely appeals.[3]

## ANALYSIS

"Washington's privacy act generally prohibits intercepting and recording any private communications" without full consent of the parties. *State v. Jimenez*, 128 Wn.2d 720, 723, 911 P.2d 1337 (1996) (citing RCW 9.73.030). An exception applies in the context of narcotics investigations. A law enforcement agency may self-authorize an

---

[3] By agreement of the chief judges, Division Two of this court transferred this appeal to Division Three pursuant to CAR 21(a) and RAP 4.4.

undercover narcotics recording so long as the agency satisfies the criteria set forth in RCW 9.73.230.

JNET relied on RCW 9.73.230 to authorize the recordings of Mr. Ridgley's conversations with the confidential informant. At trial and on appeal, Mr. Ridgley has argued the State's self-authorizations were invalid because they failed to meet the requirements of RCW 9.73.230. Specifically, Mr. Ridgley argues the authorization reports did not include the names of each and every officer authorized to intercept, transmit, and record the undercover communications, as required by RCW 9.73.230(2)(c). Mr. Ridgley argues the violation of RCW 9.73.230(2)(c) should have resulted in suppression of evidence.

The issue raised by Mr. Ridgley involves statutory interpretation. When engaged in statutory interpretation our review is de novo and our goal is to discern legislative intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). The best source of legislative intent is the words used in the statute, along with context and related statutes. *State v. Barnes*, 189 Wn.2d 492, 495-96, 403 P.3d 72 (2017).

The privacy act's self-authorizing provision permits a chief law enforcement officer, or their designee above the rank of first line supervisor, to authorize an undercover recording without obtaining a warrant or full-party consent. RCW 9.73.230.

4

There are three statutory prerequisites for self-authorization. RCW 9.73.230(1)(a)-(c). One of the prerequisites is a written report, prepared and signed at the time of the authorization, that includes the information set forth at RCW 9.73.230(2)(a)-(f). RCW 9.73.230(1)(c). Under the criteria at issue here, the report must "indicate[] . . . the names of the officers authorized to intercept, transmit, and record the conversation or communication." RCW 9.73.230(2)(c).

Valid self-authorization demands strict compliance with the statute. *State v. Jimenez*, 76 Wn. App. 647, 651-52, 888 P.2d 744 (1995) (*Jimenez* I), *rev'd on other grounds*, 128 Wn.2d 720, 722, 911 P.2d 1337 (1996) (*Jimenez* II); *State v. Costello*, 84 Wn. App. 150, 154, 925 P.2d 1296 (1996); *State v. Knight*, 79 Wn. App. 670, 685, 904 P.2d 1159 (1995). In *Jimenez* I, this court held that an authorization report prepared under RCW 9.73.230(2) must identify the specific officers authorized to intercept, transmit or record a communication. 76 Wn. App. at 651-52.

The parties agree that the RCW 9.73.230 reports issued in Mr. Ridgley's case did not identify the authorized officers with the type of specificity required by *Jimenez* I. As set forth above, the two reports identified one authorized officer, Detective Chad Withrow, and employed a catchall phrase to include "any other" investigating officers.

5

CP at 43, 49. The probable cause statement attached to the report also did not clarify the identity of the other officers.

Although the reports failed to comport with *Jimenez* I, the State claims we should rule in its favor because *Jimenez* I was wrongly decided. We are not bound to follow the decision in *Jimenez* I. *In re Pers. Restraint of Arnold*, 190 Wn.2d 136, 154, 410 P.3d 1133 (2018). Thus, we consider the merits of State's arguments.

The State's analysis focuses on the transitive verb "indicate." RCW 9.73.230(2) ("The agency's chief . . . shall prepare and sign a written report . . . *indicating* . . . .") (emphasis added). According to the State, by definition "indicate" does not require the object or objects that follow this verb to be listed "with exact precision and certainty." Resp't's Br. at 15. Instead, it is enough to provide a generalized statement, setting forth the names of the officers "known at the time" of the report. *Id*. at 16.

The State's interpretation is contrary to the plain wording of RCW 9.73.230. The legislature did not state a self-authorizing report need only list the names of authorized officers "if known." This omission is telling because it contrasts with RCW 9.73.230(2)(d), which addresses the requirement that a self-authorizing report identify the target of an investigation. This subsection, unlike subsection (2)(c), states the identity of the involved person must be listed only "if known." RCW 9.73.230(2)(d).

When the legislature uses different language in the same statute, we presume they "intended different meanings." *In re Det. of McMahan*, 1 Wn. App. 2d 373, 379, 405 P.3d 1012 (2017) (citing *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 219, 173 P.3d 885 (2007)). Here, subsection (2)(d) allows a catchall for unknown names, but subsection (2)(c) does not. In order to give effect to this different wording, we interpret subsection (2)(c) to require a list of the names of all officers who will be involved in the intercept, as contemplated by *Jimenez* I.

We agree with *Jimenez* I's interpretation of RCW 9.73.230(2)(c). As a result, we hold the intercept authorizations at issue in this case were invalid and subject to suppression.

Evidence obtained in violation of the privacy act's self-authorizing provision is generally inadmissible at a criminal trial. RCW 9.73.050. However, a party or eyewitness to an unauthorized recording is not necessarily prohibited from testifying as to what they saw or heard. RCW 9.73.230(8).When "law enforcement officers make a genuine effort to comply with" RCW 9.73.230, a violation of the statute will not prohibit introduction of evidence unaided by the improperly obtained intercept or recording. *Jimenez* II, 128 Wn.2d at 726 (citing RCW 9.73.230(8)).

Mr. Ridgley agrees the officers in his case made a genuine effort to comply with

RCW 9.73.230. As a result, our ruling on the inadmissibility of the undercover recordings

does not invalidate all of the State's evidence. Percipient witnesses, including the

confidential informant and possibly law enforcement, were still eligible to testify, so

long as their testimony was not formed or aided by the undercover recordings.[4]

Where, as here, we have invalidated only a portion of evidence at trial based on

invalid recordings, remand is appropriate for the trial court to assess the effect, if any,

of the improperly admitted evidence on the defendant's convictions, including the impact

on the State's search warrants. *Jimenez* II, 128 Wn.2d at 726. If the admission of the

recordings is found to have been harmless, the convictions should be affirmed. If,

however, the admission of the recordings is deemed prejudicial, Mr. Ridgley will be

entitled to a new trial.[5]

---

[4] Because law enforcement officers were not involved in the undercover buys, they would not be direct percipient witnesses of the two transactions. However, they likely would be able to testify to their observations of the informant before and after the undercover buys, including pre- and post-buy searches. Law enforcement would not be able to testify as to information learned from listening to the undercover recordings.

[5] Based on our disposition, we need not address Mr. Ridgley's claim that he was deprived of effective assistance of counsel based on counsel's purportedly limited understanding of what it meant for testimony to be "unaided" by information obtained in violation of statute. *See* RCW 9.73.230(8). The scope of the suppression remedy can be clarified on remand.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Mr. Ridgley has submitted a pro se statement, asserting two additional grounds for review. Appended to his statement are two documents that appear to have been received in response to a request under the Public Records Act, chapter 42.56 RCW. Because these documents are not part of the trial court record, they cannot be considered on appeal. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). If Mr. Ridgley wishes for this court to consider these two documents, the vehicle for doing so is a personal restraint petition. *Id.*

The first issue raised by Mr. Ridgley is the claim that Chief Nielsen lacked jurisdiction in Onalaska, Washington because he was a Centralia municipal police officer, not a member of JNET. This contention fails because it is contrary to the trial court's findings. *See* CP at 95 (finding Chief Nielsen "was part of JNET as a member of the Executive Board and had the ability to authorize a wire intercept in unincorporated Lewis County"). Mr. Ridgley has not challenged the trial court's findings. They are therefore verities on appeal. *See State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Mr. Ridgley's claim that Chief Nielsen lacked authority to authorize interceptions of Mr. Ridgley's communications fails.

9

The second issue raised by Mr. Ridgley is a complaint that the written reports required by RCW 9.73.230 are missing from the record. This claim was not raised at trial. It is unpreserved and we decline review. *See* RAP 2.5(a).

## CONCLUSION

We hold the intercept authorizations at issue in this case were invalid and evidence related to the undercover recordings should have been suppressed from Mr. Ridgley's trial. This matter is remanded to the trial court for a determination of the effect, if any, of the improperly admitted undercover recordings on Mr. Ridgley's convictions, including the impact on the search warrant for Mr. Ridgley's home. *See Jimenez* II, 128 Wn.2d at 726.

_____, C.J.
Pennell, C.J.

WE CONCUR:


_____, J.
Fearing, J.


_____, J.
Staab, J.