IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CATHOLIC HOUSING SERVICES OF EASTERN WASHINGTON, a Washington Nonprofit Corporation, authorized agent for FATHER BACH HAVEN APARTMENTS, | ) ) ) ) ) ) | No. 39958-3-III |
| Respondents, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) ) | |
| KENNETH TRUITT, a single person and all other subtenants, | ) ) ) | |
| Appellants. | ) | |

COONEY, J. — Kenneth Truitt was a tenant at the Father Bach Haven Apartments. Catholic Housing Services of Eastern Washington (CHSEW) is the authorized agent for the Father Bach Haven Apartments. CHSEW served Mr. Truitt with nine "Ten (10) Day Notice[s] to Comply or Vacate" (collectively "Prior Notices") during his tenancy. CHSEW later served Mr. Truitt with an "Amended Notice to Quit and Vacate" (hereinafter "Current Notice") after he was charged with assaulting a fellow tenant.

CHSEW filed a complaint for unlawful detainer after Mr. Truitt failed to adhere to the Current Notice and vacate his apartment. CHSEW then brought a motion to show cause why an order for a writ of restitution should not be issued. A show cause hearing was held, and the superior court granted CHSEW's request for this issuance of a writ of restitution. The court declined to set the matter for trial, finding all the issues had been resolved.

Mr. Truitt appeals, arguing the court erred in admitting the Prior Notices into evidence and in not scheduling the matter for trial. We disagree with Mr. Truitt and affirm.

## BACKGROUND

Mr. Truitt entered into a lease agreement with Father Bach Haven Apartments in April 2018. The initial lease term was for one year and, thereafter, was month-to-month. CHSEW served Mr. Truitt with numerous "Ten (10) Day Notice[s] to Comply or Vacate" and "Thirty (30) Day Notice[s] to Comply or Vacate" during his tenancy. Clerk's Papers (CP) at 82, 87, 94, 100, 108, 113, 119, 130.

The first notice was issued in June of 2018 and stated management had received complaints about Mr. Truitt playing loud music during quiet hours. Notices from December 2018, January 2019, and August 2019 also alleged Mr. Truitt was making excessive noise. The December 2018 notice also alleged management staff witnessed Mr. Truitt "handing hypodermic needle [sic] to two homeless individuals" near the

2

apartment's parking lot, and that management saw him throw "a bag of trash over the garbage enclosure outside of the compactor area." CP at 87; Ex. P4. Additionally, a notice to comply or vacate issued in January of 2019 alleged that Mr. Truitt "left a note on a resident's door that detailed a threat to cause them physical harm." CP at 94; Ex. P5.

Further, an August 2019 notice alleged Mr. Truitt let unattended guests into the apartment building and left his bicycle in the shared hallway. Two September 2021 notices alleged Mr. Truitt painted the floors and walls of his apartment, replaced several cupboard doors in the kitchen, "removed the lock to the vent/air-conditioning unit," and unreasonably refused the landlord entry "after proper notice." CP at 113, 108; Ex. P11, P13. Moreover, a January 2021 notice stated Mr. Truitt made unauthorized alterations to a common area hallway wall, failed to notify maintenance of defects in his unit, failed to clean and maintain his unit, and compromised "ingress/egress and increas[ed] the risk of fire, hazard, mold, and/or infestation." CP at 119; Ex. P16. Finally, a February 2023 notice alleged Mr. Truitt failed to allow the landlord access for a scheduled inspection.

In June 2023, Mr. Truitt was served the Current Notice which led to this unlawful detainer action. The Current Notice reiterated all of the allegations made in the Prior Notices and further alleged Mr. Truitt had engaged in an "altercation with a neighboring resident" in which he "verbally intimidated, harassed and/or threatened the resident" and grabbed the resident by her "throat and attempt[ed] to stab the resident with a deadly

3

weapon (knife)." CP at 206; Ex. P25. Mr. Truitt was charged with second degree assault for this incident.

In July 2023, CHSEW filed a complaint for unlawful detainer and damages as Mr. Truitt had not vacated the premises. The complaint outlined the allegations made in the Prior Notices and the Current Notice. The complaint alleged Mr. Truitt's eviction was warranted under RCW 59.18.650(2)(c). The complaint requested an order for the issuance of a writ of restitution, restoring possession of the apartment to CHSEW, and for monetary damages. CHSEW filed a motion to show cause, and a hearing was held on August 30, 2023.

Joshua David, the regional operations manager for CHSEW, testified at the show cause hearing. CHSEW sought to present the June 2018 notice to comply or vacate and counsel for Mr. Truitt objected to its admission "both on relevance and foundation." Rep. of Proc. (RP) at 33-34. The court allowed CHSEW to lay a foundation for the exhibit and then overruled the objection. Counsel for Mr. Truitt lodged the same objection to the admission of the other notices; the court overruled each objection and admitted the notices. The Current Notice was admitted without objection.

Photographs of Mr. Truitt's apartment, taken on June 15, 2023, were admitted at the hearing. Mr. David also authenticated a video recording of the incident in which Mr. Truitt allegedly assaulted his neighbor. The video showed Mr. Truitt on one side of the street and a woman, identified as a resident of "[apartment] 414" on the other. RP at

4

60; Ex. P25, P28 at 0:04-0:34. The two appeared to be talking or yelling at each other from across the street when Mr. Truitt suddenly shouted, "let's do it bitch!" and quickly crossed the street toward the woman. Ex. P28 at 0:34-0:40. As Mr. Truitt approached the woman, he could be seen pulling something out of his jacket. The recording showed Mr. Truitt engage in a brief physical altercation with the woman once he approached her.

Mr. Truitt testified at the show cause hearing. He admitted to numerous allegations contained in the Prior Notices. In regard to the allegation that Mr. Truitt assaulted his neighbor, despite his attorney's advice that he "preserve [his] Fifth Amendment right," Mr. Truitt testified to the following:

> [COUNSEL FOR CHSEW:] Did you pull a knife out of your holster as you approached that woman?
>
> [MR. TRUITT:] I had a knife in my pocket from working on my car that day, and when she said she was going to come over and smash me, you don't know the people downtown what they're smoking, what they're drinking. I've seen girls with razor blades, knives. I took it as a threat.
>
> [COUNSEL FOR CHSEW:] I understand. In that video, was it she who approached you by crossing the street or was it you who crossed the street to approach her?
>
> [MR. TRUITT:] It was me to go over there and squash the threats I was getting from her.
>
> [COUNSEL FOR CHSEW:] Is that why you pulled your jacket aside to pull the knife out?
>
> [MR. TRUITT:] Yes.
>
> [COUNSEL FOR CHSEW:] So you brought the knife out and pointed it towards her?

5

[MR. TRUITT:] I wanted her—to let her know she wasn't smashing me out or wasn't going to make any more threats against me.

RP at 75-76.

At the conclusion of the show cause hearing, the court ruled:

When looking at all of this, does the Court find based on the evidence presented that there was substantial, repeated and unreasonable interference with the use and enjoyment of the premises by the landlord or the neighbors, and the unlawful activity that affects the use and enjoyment of the premises, the Court does believe that [CHSEW has] met their burden for possession of the apartment.

RP at 87. The court indicated there were other issues, such as rental arrears, that "need to go to trial." RP at 88. The court stated, "I am going to set this matter for trial, but at this point, I'm going to grant the writ." *Id*. CHSEW responded, "We don't need to seek the rental arrears if that would avoid the need for a trial." *Id*. The court issued an order for the issuance of a writ of restitution and declined to set the matter for trial.

Mr. Truitt timely appeals.

ANALYSIS

ADMISSION OF PRIOR NOTICES

Mr. Truitt argues the trial court erred in admitting the prior notices as substantive evidence of his conduct because they contained inadmissible hearsay. CHSEW responds that Mr. Truitt did not object on hearsay grounds below so we should not address the issue.

6

Fatal to Mr. Truitt's argument is the Current Notice, containing the same allegations as those in the Prior Notices, was admitted without objection. Because the evidence complained of on appeal was before the trial regardless of the court's evidentiary rulings on the Prior Notices, any error in admitting the Prior Notices was harmless.

We review evidentiary errors under the nonconstitutional harmless error standard. *State v. Gower*, 179 Wn.2d 851, 854, 321 P.3d 1178 (2014). Under this standard, this court will not reverse the trial court unless we are persuaded that, absent the error, there is a reasonable probability that "'the outcome of the trial would have been materially affected.'" *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986) (quoting *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980)).

Here, Mr. Truitt did not object to the admission of the Current Notice that contained the same information as the Prior Notices. Consequently, admission of the evidence he complains of on appeal would have been before the trial court regardless of the court's ruling on the admissibility of the Prior Notices. We are unpersuaded the outcome of the hearing would have been materially affected had the court declined to admit the Prior Notices into evidence.

FAILURE TO SCHEDULE TRIAL

Mr. Truitt argues the court erred by resolving the case at the show cause hearing rather than scheduling a trial. CHSEW responds the court properly disposed of the case without setting it for trial because it was clear that CHSEW would prevail on the merits and Mr. Truitt did not create a genuine issue of material fact. We agree with CHSEW.

An unlawful detainer action is a statutory proceeding which provides an expedited method of resolving the right to possession of a leased property and other related issues such as restitution or rent. *4105 1st Ave. S. Invs., LLC v. Green Depot Wash. Pac. Coast, LLC*, 179 Wn. App. 777, 785, 321 P.3d 254 (2014). Chapter 59.12 RCW and the Residential Landlord-Tenant Act of 1973 (RLTA), chapter 59.18 RCW, set forth Washington's unlawful detainer process. *Kiemle & Hagood Co. v. Daniels*, 26 Wn. App. 2d 199, 210, 528 P.3d 834 (2023). Chapter 59.12 RCW and the RLTA are "statutes in derogation of the common law" so are "strictly construed in favor of the tenant." *Randy Reynolds & Assocs. v. Harmon*, 193 Wn.2d 143, 156, 437 P.3d 677 (2019).

"Prior to initiating an unlawful detainer action, a residential landlord must issue a written notice to terminate the tenancy that must be served consistent with RCW 59.12.040." *Daniels*, 26 Wn. App. 2d at 210. The notice must "[i]dentify the facts and circumstances known and available to the landlord at the time of the issuance of the notice that support the cause or causes with enough specificity so as to enable the tenant to respond and prepare a defense to any incidents alleged." RCW 59.18.650(6)(b).

RCW 59.18.650(2) sets forth the permissible grounds for termination of a residential tenancy. Relevant here is RCW 59.18.650(2)(c) which provides four possible bases for eviction: (1) waste, (2) nuisance, (3) "unlawful activity that affects the use and enjoyment of the premises," and (4) "substantial or repeated and unreasonable interference with the use and enjoyment of the premises by the landlord or neighbors of the tenant."

If a tenant remains in possession of the premises in violation of the terms of the landlord's notice, the landlord may file an action for unlawful detainer and apply for a writ of restitution. *Daniels*, 26 Wn. App. 2d at 211. Under the RLTA, the court will not order the issuance of a writ of restitution without conducting a show cause hearing. *Id.*

A show cause hearing is a summary proceeding to determine the question of possession pending suit but it is not necessarily a final determination of the parties' rights. *Randy Reynolds*, 193 Wn.2d at 157. Though a show cause hearing is a summary proceeding, it is "fairly substantial." *Daniels*, 26 Wn. App. 2d at 212. At the hearing, "[t]he court shall examine the parties and witnesses orally to ascertain the merits" of the case. RCW 59.18.380. The rules of evidence apply at show cause hearings. *Hous. Auth. of the City of Pasco v. Pleasant*, 126 Wn. App. 382, 392, 109 P.3d 422 (2005). If it appears the landlord will likely prevail on the merits, the court may restore the landlord to possession of the residential property. *Daniels*, 26 Wn. App. 2d at 212. It is the landlord's burden to prove entitlement to a writ of restitution. *Liverpool, LLC v. Farley*, 33 Wn. App. 2d 568, 580, 563 P.3d 457 (2025).

9

"Even if a landlord convinces the court of a likelihood of success on the merits and obtains a writ of restitution, trial may still be necessary." *Daniels*, 26 Wn. App. 2d at 212. Similar to a summary judgment proceeding, if a tenant raises "'a genuine issue of . . . material fact'" pertaining to a defense against eviction, the case must go to trial, even if the tenant has temporarily lost possession of the property due to a writ of restitution. *Id.* (quoting RCW 59.18.380). However, if no genuine issues of material fact remain, trial is inappropriate, and the case may be decided at the show cause stage. *Tedford v. Guy*, 13 Wn. App. 2d 1, 17, 462 P.3d 869 (2020). Because this is akin to a summary judgment standard, our review is de novo. *Daniels*, 26 Wn. App. 2d at 218-19.[1]

Mr. Truitt argues there were issues of material fact related to whether his conduct warranted eviction under RCW 59.18.250(2)(c). CHSEW responds there were no genuine issues of material fact, and the case was properly disposed of at the show cause stage. We agree with CHSEW.

Here, CHSEW raised two independent bases for eviction under RCW 59.18.650(2)(c). First, that Mr. Truitt engaged in "unlawful activity that affects the use and enjoyment of the premises" based on his assault of his neighbor. RCW

---

[1] Division Two of this court has stated the standard of review pertaining to a trial court's decision in this context is abuse of discretion. *Guy*, 13 Wn. App. 2d at 16. But Division Two's decision is not binding on us, and our court has previously determined that "something close to de novo review should apply." *Daniels*, 26 Wn. App. 2d at 218; *In re Pers. Restraint of Arnold*, 190 Wn.2d 136, 154, 410 P.3d 1133 (2018).

59.18.650(2)(c).  Second, that Mr. Truitt engaged in "substantial or repeated and unreasonable interference with the use and enjoyment of the premises by the landlord or neighbors" based on, among other things, his excessive noise, improperly disposing of garbage, painting the walls and floor of his unit, smoking in his unit, increasing the risk of a fire hazard, and verbally assaulting, harassing, and threatening neighbors. RCW 59.18.650(2)(c).  After considering the evidence presented at the show cause hearing, the court concluded there were no genuine issues of material fact and issued CHSEW a writ of restitution.  The court was inclined to set the matter for trial to decide the issue of rental arrears but CHSEW indicated it would "sever that and handle that matter in a separate way" to avoid trial.  RP at 88.

Though we determined any error was harmless, because Mr. Truitt challenges the admission of the Prior Notices, we focus our review on the allegation that Mr. Truitt assaulted a fellow tenant as contained in the Current Notice.

"We note that RCW 59.18.650(2)(c)'s phrase 'unreasonable interference with the use and enjoyment of the premises,' echoes a common definition of 'nuisance.'" *Daniels*, 26 Wn. App. 2d at 220.  But we interpreted RCW 59.18.650(2)(c)'s reference to "'interference with the use and enjoyment of the premises' as referring to either 'substantial or repeated and unreasonable' conduct that approximates a nuisance, even if the steep standard for a nuisance claim is not quite met." *Id.*  Reasonableness is typically

a question of fact but can be resolved as a matter of law "where reasonable minds could come to only one conclusion." *Id.*

CHSEW presented evidence to support the allegation detailed in the Current Notice that Mr. Truitt was "observed engaging in a verbal and physical altercation with a neighboring resident," and that he "grabb[ed] the resident by the resident's throat and attempt[ed] to stab the resident with a deadly weapon." RP at 55. Indeed, Mr. Truitt was arrested and charged with second degree assault following the altercation. A video recording that captured the incident showed Mr. Truitt assault the woman, identified as a fellow resident of the Father Bach Haven Apartments, and demonstrated he was the physical aggressor. Mr. Truitt testified he had a knife in his pocket "from working on [his] car" and admitted he approached the woman, pulled the knife out, and pointed it at her. RP at 76. Upon approaching the woman, Mr. Truitt exclaimed, "let's do it bitch!" Ex. P28 at 0:34-0:40. Independently, the assault was sufficient evidence of unlawful activity that affects the use and enjoyment of the premises. Mr. Truitt's unlawful actions certainly interfered with the ability of the neighbor he assaulted to use and enjoy the premises. Exposure to this kind of violence also further interfered with other tenants' use and enjoyment of the premises.

Given CHSEW's evidence and Mr. Truitt's testimony, there was no genuine issue of material fact related to whether Mr. Truitt engaged in "unlawful activity that affects the use and enjoyment of the premises" based on his assault of his neighbor.

12

RCW 59.18.650(2)(c). The lack of a genuine issue of material fact was sufficient for the court to issue a writ of restitution. Further, because there were not additional issues to be decided, the court properly declined to set the matter for trial. The court correctly resolved the matter at the show cause stage.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Fearing, J.

_____
Murphy, M.